# Safe Deposit & Trust Co., Exr., Appellant, *v.* Kelly.

[Marked to be reported.]

*Mortgage—Bond—Satisfaction—Intent.*

A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes, and subject to remedies which are as unlike as personal actions and proceedings in rem, are, nevertheless, so far one that payment of either discharges both, and a release or extinguishment of either without actual payment is a discharge of the other, unless otherwise intended by the parties. Fleming v. Parry, 24 Pa. 47, applied.

*Satisfaction of mortgage—Intent—Question for jury.*

The entry of satisfaction of record on a mortgage destroys the mortgage and all remedies upon it, and it also extinguishes the debt upon the bond accompanying the mortgage if the parties so intend. The question whether the parties intend that the debt should be extinguished is a question of fact to be determined by the jury under all the evidence.

Decedent in her lifetime held a bond and mortgage against her son-in-law. Prior to her death her son-in-law was instrumental in saving her a large sum of money, and out of gratitude she quietly went to the recorder's office and satisfied the mortgage, without informing him of her action. She retained the mortgage and bond, and continued to receive interest, but without giving receipts. When urged by a daughter to inform her son-in-law of her action she refused, saying that when he found it out it would be all the sweeter to him. She made other statements showing that she intended to extinguish the debt. After her death her executor brought suit on the bond. *Held,* that a verdict and judgment for defendant should be sustained.

*Evidence—Declarations—Satisfaction of mortgage.*

In the above case declarations of decedent made after the satisfaction of the mortgage, to the effect that she intended to make the mortgagor pay principal and interest of the mortgage, were incompetent, as they could not suffice to destroy the legal effect of the act of satisfaction.

Argued Oct. 27, 1893. Appeal, Nos. 171 and 172, Oct. T., 1893, by plaintiff, executor of Ann Sheehan, deceased, from judgment of C. P. No. 2, Allegheny Co., July T., 1892, Nos. 15 and 16, on verdict for defendant, James M. Kelly. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Sci. fa. on mortgage and assumpsit on accompanying bond.

At the trial, before WHITE, J., it appeared that defendant was indebted to his mother-in-law, Ann Sheehan, on a bond and mortgage. Some time prior to Mrs. Sheehan's death, defendant was instrumental in saving her a large sum of money, by warning her of the insolvency of a bank in which she had the money deposited. On May 25, 1886, Mrs. Sheehan went to the recorder's office and satisfied the mortgage of record, but did not inform defendant of this act, nor did she ever surrender to him the bond or mortgage. She continued to receive interest from him until her death, but did not give receipts for it. Defendant offered in evidence numerous declarations of Mrs. Sheehan which tended to show that by the satisfaction of the mortgage she intended to extinguish the debt. This evidence is stated at length in the opinion of the Supreme Court.

When Mary Loughrey, a witness for plaintiff, was on the stand, plaintiff offered to prove that shortly before decedent's death and after the satisfaction of the mortgage she complained

that James M. Kelly was in default in payment of the mortgage, and that she intended to make him pay the principal as well as interest, or words to that effect. Objected to as incompetent and as hearsay. Objection sustained and bill sealed. [6]

The court charged in part as follows :

" [On the 25th day of May, 1886, that would be nine years after the bond and mortgage were given, Mrs. Sheehan went to the recorder's office in this county, where the mortgage was recorded, and on the face of the mortgage acknowledged to have received full satisfaction of that mortgage—signed her name and put her seal to that acknowledgment. I say to you that that is a complete answer to the scire facias on the mortgage, and that in that case your verdict should be for the defendant. Where there is an entry of satisfaction on the mortgage, as in this case, it is a fair presumption that it is in satisfaction of the debt as well as of the mortgage. The inference, and the fair inference, in the absence of any other evidence, would be that that satisfaction was intended to wipe out the debt as well as remove the mortgage. That is what is called the prima facie evidence. That is, such is the presumption of law, but it is a presumption that may be overcome by evidence of a different character. It is not so conclusive as not to be explained or not to be overthrown by evidence showing that there was a mistake in the matter, or that it was intended for a different purpose, or something of that kind. Now there is not in this case a scintilla of evidence that Mrs. Sheehan did not intend to relinquish entirely that mortgage, to satisfy it and to remove it from the farm that was covered by it, and in the absence of any evidence to indicate any mistake on her part, or any other intention than what appears on the face of that satisfaction, I say the satisfaction is conclusive as to her intention to relinquish that mortgage, and release the property from the lien of it.] [1] I have said that the presumption is further—that it was intended as a satisfaction of the debt on the bond as well as the mortgage, but it is open to evidence to explain whether that was her intention or not. A party having two securities for a debt may give up one of the securities and hold on to the other. She may have intended to give up that mortgage and still hold on to the bond, and that is the question now for you. What was her intention when she satisfied that mortgage ? Was it sim-

ply to remove the mortgage and hold on to the bond, and make
the defendant pay the debt on the bond, or was it intended as
a relinquishment of the whole debt?   Now the plaintiff con-
tends that there is evidence to show that she did not intend to
relinquish the debt, and the evidence consists mainly of three
things.   One is that the mortgaged debt was not paid, and there
is no allegation here that it was paid.   It is admitted that there
is still a balance of $3,300 on the debt.   That is one ground,
yet a party that has a debt may voluntarily forgive that debt.
If there is a mistake in any receipt, or anything of that kind,
it can be corrected, but if a party holds your note for $1,000,
more or less, he can give you that note—relinquish the debt,
and if he does so that is the end of it, unless some person is to
be prejudiced or injured by it, especially a creditor.

" Another point on the part of the plaintiff is that Mrs. Shee-
han did not give up the bond at the time of the satisfaction of
that mortgage.   Ordinarily, when a bond is paid it is given up
to the party.   Or, if she intended at the time to make a present
of it to Mr. Kelly, she could have delivered the bond at that
time, and, not having delivered the bond at that time, it is con-
tended on the part of the plaintiff that that is evidence that she
did not intend to extinguish the debt.   Well, it is evidence
bearing on that point, and I may say pregnant evidence, if not
explained in some way.

" [Another ground is that after the satisfaction of that mort-
gage the defendant paid money, and that Mrs. Sheehan received
money on this debt after the 26th of May, 1886, and several re-
ceipts have been put in evidence.   In the first place, on the back
of the bond itself are receipts testified to by the daughter as
being in the handwriting of their mother, Mrs. Sheehan.   All
of these receipts on the back of the bond are prior to the 25th
of May, 1886, the time that mortgage was satisfied, except one,
and that is a receipt on the 13th of October, 1888.   Now in
connection with this is this little paper pinned to the bond, that
according to the testimony is in the handwriting of Ann Shee-
han, but how it got there is not definitely explained.   It may
have been pinned there by Ann Sheehan, or it may have been
in the bond, or connected with the bond at the time it was
found.   It gives payments made after May, 1886, and perhaps
one or two before that, and covering these receipts that have

been put in evidence by the plaintiff, and the wording of these receipts may throw some light on this case. The entry of satisfaction was in May, 1886. The first receipt after that is 13th of October, 1887, 'Received of James M. Kelly, interest in full to date.' It does not say how much. It does not say whether on a bond or mortgage, or what it is on. The next is April 13, 1888, 'Received of James M. Kelly, interest in full to date.' That does not say on what, bond or mortgage; does not give the amount. The next is the receipt of October 13, 1888, 'Received of James M. Kelly, interest in full of all demands to date. Ann Sheehan.' That does not say whether on the bond or mortgage, or what. That receipt, or that amount rather, she has entered on the back of this bond, and it says, 'Received interest in full of all demands to October 13th, 1888.' There was abundant space on the back of this bond to enter all these payments. Why were they put on a little slip like that and not on the back of the bond? The next receipt is April 13, 1890, 'Received of James M. Kelly, interest in full of all demands to date.' Does not give any amount; does not say whether on bond or mortgage, or what it is on. There are none of these that refer to the mortgage. On the back of this bond the executors, after they obtained the papers, made an entry that the interest was paid up to April 13, 1890, by receipts in the hand of Mr. Kelly, and that is the receipt I last read. Those are the payments made to Ann Sheehan, during her lifetime, and it is argued, and it is a matter for the consideration of the jury, whether, if she intended that satisfaction to be an extinguishment of the debt, she would have received interest afterwards, and in that connection it may be worth while for the jury to consider why she did not enter those payments on this bond, and why were they put on little slips like that.] [7] Then after the death of Mrs. Sheehan, Mrs. Kelly paid $198 to the executors. These payments by the defendant, if unexplained here, would be very strong evidence against him, but the evidence is on his part, and his wife, that they never knew of this entry of satisfaction on the mortgage until after this last payment to the executors."

Plaintiff's points were as follows:

"1. That in the suit on the bond, (No. 15, July term, 1892,) if the jury find that the bond was never delivered to defendant,

but was retained by Ann Sheehan, the obligee, in her possession till her death, and that she collected interest upon it from defendant after the date of the alleged satisfaction down to the time of her death, then the verdict must be for the plaintiff for the unpaid balance of said bond with interest." Refused. [2]

" 2. That under all the evidence in said action, (No. 15, July term, 1892,) being the suit on the bond, the plaintiff is entitled to the verdict." Refused. [3]

" 3. That in the suit on the mortgage, (No. 16, July term, 1892,) if the jury find that Ann Sheehan, the mortgagee, retained the mortgage in her possession till her death, and collected interest upon the debt secured by said mortgage till the time of her death, and that defendant also paid interest thereon to the plaintiff, her executor, after her death, then the plaintiff is entitled to a verdict in this case for the unpaid balance of principal with its interest, notwithstanding the entry of satisfaction upon the record of the mortgage." Refused. [4]

" 4. That under all the evidence in the case, (No. 16, July term, 1892,) being the suit on the mortgage, the verdict must be for the plaintiff." Refused. [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–5, 7) instructions; (6) ruling on evidence; quoting instructions and bill of exception.

*Thomas C. Lazear, Charles P. Orr* with him, for appellant.— The evidence tending to show mistake in the entry of satisfaction, was sufficient. It consisted of the following undisputed facts, to wit : the fact that the mortgage was never delivered to defendant, nor was he ever notified of the satisfaction ; the fact also that not only Mrs. Sheehan retained the mortgage in her possession, but afterwards collected the interest on it as it became due, with a part of the principal as she had done before, and continued to do until the time of her death ; the fact also that she was seventy-three years old at the date of this satisfaction and was liable therefore to make just such a mistake.

There was no consideration for the satisfaction : Megargel's Adms. v. Megargel, 105 Pa. 475. Want of consideration is a good defence to every obligation under seal and will always invalidate it : Trough's Est., 75 Pa. 115 ; Zimmerman v. Streeper, 75 Pa. 152 ; Pringle v. Pringle, 59 Pa. 281.

Granting that the satisfaction of the mortgage operated to discharge it as a security for the debt, it did not thereby discharge the debt. It was, at the utmost, only prima facie evidence of an intention to extinguish the debt: Fleming v. Parry, 24 Pa. 47 ; West's Ap., 88 Pa. 341.

A gift of a bond, note, or any other chattel cannot be made by words in futuro, or by words in presenti, unaccompanied by such delivery of the possession as makes the disposal of the thing irrevocable: Campbell's Est., 7 Pa. 100 ; Trough's Est., 75 Pa. 115 ; Kidder v. Kidder, 33 Pa. 268 ; Zimmerman v. Streeper, 75 Pa. 147 ; Scott v. Lauman, 104 Pa. 593 ; Bond v. Bunting, 78 Pa. 210 ; Walsh's Ap., 122 Pa. 177.

The testimony of the witness (Mary Loughrey), if admitted, would have gone far to show mistake in the satisfaction of the mortgage, and to rebut the presumption of the gift of the debt to the defendant, and to rebut the testimony adduced on part of defendant for the purpose of proving a gift: Young v. Power, 41 Miss. 197.

An acknowledged exception to the rule which prohibits a party from producing his own declarations in his favor is where such declarations are necessary to explain an act which takes its character from the design and intention of the party who does it: Cross v. Black, 9 G. & J. Md. 198.

The comments of the learned judge on the slip of paper pinned to the bond were wholly outside of the issue, for the credits indorsed on the paper were shown to be correct by the receipts produced by defendant, on notice to produce at the trial all the receipts in his possession for payments he had made to Mrs. Sheehan on the bond after the date of the satisfaction of the mortgage.

*George H. Quaill*, for appellee.—The entry of satisfaction of the mortgage under the hand and seal of the mortgagee was all sufficient to put the mortgage out of existence, and sufficient, too, to satisfy the debt, if so intended. Prima facie this act imports extinguishment of the debt as well as the mortgage, and the burden of showing that that act on the part of the mortgagee was not so intended was on plaintiff, and when evidence was submitted to the jury on that point it was for them to decide as a question of fact whether or not the satisfaction of

the mortgage had been satisfactorily explained, as intended only to wipe off the mortgage : Fleming v. Parry, 24 Pa. 47.

OPINION BY MR. JUSTICE GREEN, December 30, 1893 :

These cases were tried in the court below in exact conformity with the decision of this court in the case of Fleming v. Parry, 24 Pa. 47. The leading facts in that case were almost precisely similar to the leading facts of this. In both there was a mortgage and a bond given by the mortgagor to the mortgagee. In both the mortgagee executed on the record of the mortgage an acknowledgment of satisfaction in full of the mortgage. In both the mortgagee retained possession of the mortgage and also of the bond until death. In both the actions were brought by the legal representatives of the mortgagee ; in the Fleming case the action being debt on the bond, and in this case there being an action on the bond, and also a scire facias on the mortgage. The serious difference between the cases is that in the Fleming case there was literally no supporting testimony to show that the mortgagee intended to extinguish the debt by the entry of satisfaction of the mortgage, while here there was an abundance of the most convincing and satisfactory testimony to show that the entry of satisfaction was made for the very purpose of extinguishing the debt. In the Fleming case the court below was of opinion that the entry of satisfaction on the mortgage extinguished the debt due on the bond, of its own force, whereas in this case the court below left the question of intent to extinguish the debt to the jury, with careful and precise instructions as to what must be found in order to determine that question. This court, in the Fleming case, held that the satisfaction of the mortgage did destroy the mortgage and all remedies upon it, and that whether the debt was intended to be thereby extinguished was a question of fact which the jury must determine upon all the evidence. The court below in the present case charged that the mortgage was extinguished by the entry of satisfaction, and directed the jury to find for the defendant in the action of scire facias, but left the question of extinguishment of the debt to the jury in the action on the bond. On this question the jury found for the defendant, and the verdict was eminently justified by the evidence. It thus appears that the very course directed

to be pursued by this court in the Fleming case was actually pursued by the court below on the trial of this.

In the Fleming case, Mr. Justice WOODWARD, delivering the opinion, said : " A bond and mortgage taken for the same debt, though distinct securities, possessing dissimilar attributes, and subject to remedies which are as unlike as personal actions and proceedings in rem, are, nevertheless, so far one that payment of either discharges both, and a release or extinguishment of either without actual payment is a discharge of the other, *unless otherwise intended by the parties.* . . . Had the mortgage been paid, the law would treat the bond as paid; and, satisfied on record, the mortgage, though not paid, was thenceforth gone, and all remedies on it. But was the bond also null? This depended on the understanding and intention of the parties, as a jury should deduce them from all the circumstances in proof. . . . The court relied much on the *words* used in satisfying the mortgage. They were substantially, but not exactly, the words prescribed by the act of assembly, but neither the debt nor the bond is mentioned. 'I, Andrew Fleming, do hereby acknowledge to have received satisfaction in full of this mortgage.' These words, signed and sealed by the mortgagee, were all-sufficient to put the mortgage out of existence, and sufficient, too, to satisfy the debt, if so intended. Prima facie they would indeed import extinguishment of the debt as well as the mortgage, and the burden of showing they were not so intended was on the creditor; but when he submitted evidence on that point, proper for the consideration of the jury, it was for *them* to decide whether the words had been satisfactorily explained, as intended only to wipe off the mortgage."

It will be perceived that the question in this case, as in the Fleming case, was not a question of the gift of a bond, but a question as to the intended extinguishment of a debt, which was evidenced by a bond, for the security of which a mortgage was also given, and the mortgage was extinguished by a solemn entry of satisfaction on the record of the mortgage duly signed and sealed by the mortgagee. What was the effect of this entry of satisfaction? Did it extinguish the mortgage only or did it also extinguish the debt? If it was so intended it did have that effect, and so the court instructed the jury. On the trial considerable testimony was given by the defend-

ant to show that the mortgagee did intend to extinguish the debt, and supposed she had done so. A clerk in the recorder's office testified to the fact of the entry of satisfaction of the mortgage. It was written and attested by him, and signed and sealed by Mrs. Sheehan. There was not a particle of testimony to show that there was any mistake or misunderstanding about it on the part of Mrs. Sheehan. It was also proved that the wife of the defendant was the daughter of Mrs. Sheehan, and that the defendant had been the means of saving to his wife's mother several thousand dollars by inducing her to withdraw, from an insolvent bank, a large amount which she had on deposit there, shortly before its failure, and that she always felt very grateful to him on that account. It was also proved by the testimony of Mrs. Parker, another daughter of Mrs. Sheehan, that, in a conversation with her mother about persons to whom she had loaned money, she spoke of Jim Kelly as one of them, and she testified as follows : "She said she had held a mortgage against him, and she told me it was now satisfied ; she says, 'about a year ago, perhaps not that long, I went down to the courthouse and with my own hand I satisfied that mortgage from all claim against Jim and Mary.' She says, 'I feel this way,' and I said to her, ' Why, don't you think that is making fish of one and flesh of another ? You are giving more to one than to the other children.' She said, 'I am not ; I have treated my children all the same, outside of yourself.' Those were her very words, and then she told me how Jim came to get that money. 'I had it in Prager's bank and he came to me one day and said, " You take your money out of the bank, it is not safe." ' . . . In a few days she went down and drew the money out. She said she hadn't it out any length of time until the bank did break, and my father and her son George both had money in there at that time, and they lost it." In another conversation about three weeks before her death she told the witness : " Mary, I am glad in my heart that I have that affair of Mary's settled. . . . I am glad in my heart that I have settled that affair of Mary's." The witness, who lived with her mother at this time, also testified that Mrs. Kelly continued to pay the interest, but that her mother did not give receipts for the payments, and Mrs. Kelly was worried about it and wanted the receipts, but she would put her off with frivolous

excuses, and one day she, the witness, said to her mother: "'You must give to those people their receipts, they must have their receipts.' 'Well,' she said, 'some day I will get at it and fix it all right, but,' she said, 'you know, Mary, that affair at the courthouse, receipts or no receipts, settles that for them.' Q. Receipts or no receipts, everything is settled? A. Yes, sir, that is mother's exact words. Q. Was there anything in those conversations, said by her as to whether or not, or do you know whether or not, she communicated the satisfaction of the mortgage to Mrs. Kelly or to Mr. Kelly? A. No, sir, they knew nothing about it. Q. Did you say anything to your mother about it? A. I told her she ought to tell them. They came down there and seemed troubled—worried; they either wanted a settlement or they wanted their receipts. I says, 'You ought to tell those people,' and she said, 'No, I won't tell them at all; they will find out, and when they find out,' she said, 'it will be all the sweeter to them.' That is her exact words."

It is impossible to believe this testimony and not believe that the act of satisfaction was intended by Mrs. Sheehan to be a complete extinguishment of the debt itself, and that she fully believed that result had been accomplished. A mere satisfaction of the mortgage as a lien would be of no value to her son-in-law, and daughter, if the debt remained, and it certainly would not be " sweeter " to them to know after her death that the debt still remained. This testimony also explains the fact that the old lady retained possession of the mortgage and bond after the entry of satisfaction, and received sums of money from her daughter as payments of interest, and also the payment of interest made after her death. She did not want them to know of it during her life, but to discover it after her death as a pleasant surprise. All of this and other testimony was submitted to the jury, with entirely correct instructions as to the effect it should, or might, have, as evidence, on the one hand, of an intended extinguishment of the debt, and, on the other, of an intention that the debt should remain.

There was other testimony corroborative of the foregoing. Another witness, Oliver C. Kelly, who had borrowed money of her, testified that she had asked him to pay not only the interest, but the principal also, of what he owed her, and in the conversation between them on this subject, " she said she wanted

to get her business straightened up, and she would like if I would straighten up so she would get her money together, all of it. ' Now,' she said, ' Jim, I don't expect there will be any trouble about his.' She said, ' I have got his business fixed; there will be no trouble after I am gone.' . . . She said she wanted to get her money all in if she could, and get her business straightened up. Her life was short, she said; she was getting old, but she said, ' Jim does not need to bother, there will be no trouble about his after I am gone.' That is as near her words as I can tell you."

The jury evidently gave credence to the testimony, and found, under the charge of the court, that Mrs. Sheehan, when she satisfied the mortgage of record, intended to, and did, thereby extinguish and discharge the debt also. As this was an act which she was entirely competent to do, the legal effect upon the debt was the same as the legal effect upon the mortgage; an entire extinction of both was accomplished, and the retention of possession of the papers by her was of no more consequence than the retention of possession of the mortgage alone would have been after an entry of satisfaction. The authorities cited for the appellant upon the point that the gift of a chose in action is not complete without actual delivery, are not applicable. In all those cases the question is, has title been acquired, have those things been done which are necessary in order to pass the title out of the donor; if not, the gift is not complete and no title passes. But here the question is, has a right of action, already existing, been extinguished by a suitable act disclaiming the right. It is not a question of the acquisition of title to the bond by a gift of it, but whether the debt which is evidenced by the bond has been discharged. An act of discharge sufficient to extinguish the mortgage has been performed by the entry of satisfaction. That act is sufficient to discharge the debt if it was so intended, and that such was the intention has been determined by the verdict of the jury upon testimony which was sufficient to support the verdict.

The foregoing considerations dispose of all the assignments of error except the sixth and seventh. As to the sixth the declarations offered were made after the satisfaction was entered and could not suffice to destroy the legal effect of that act. As to the seventh it relates only to comments of the court regarding

the omission of Mrs. Sheehan to enter the interest payments on the bond after the entry of satisfaction, and the circumstance that she had merely written them on a loose slip of paper. We see nothing wrong in those comments; the entire effect of them was to call the attention of the jury to the subject, but the whole matter was given to the jury, as we think quite properly, for their exclusive action.

Judgment affirmed.