## Lansford Building and Loan Association v. Sheerin et ux., Appellants.

Argued January 19, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John Ryan,* with him *D. J. Boyle,* for appellants.

*F. S. Riordan,* with him *George H. Kaercher,* for appellee.

OPINION BY MR. JUSTICE STERN, March 22, 1937:

In 1925 defendants borrowed from plaintiff associa-tion the sum of $10,000 and executed their bond in double that amount, with warrant of attorney attached, secured in the usual manner by a mortgage and stock of the association assigned as collateral. In 1929, the obligation having fallen into arrears, conversations were had between defendant William B. Sheerin and plaintiff's attorney Frank S. Riordan, Sheerin's version of which was that, among other suggestions, he offered to "deed the property for the amount that we owed," and that "it was understood that cleared the debt." Following these negotiations Sheerin, on August 26, wrote a letter to the association asking for a "split" mortgage "taking credit for the $2,000 I have paid or else I will deed the property over to you and pay the interest for rent." The letter proceeded: "At any rate please do not sell the property for $8,000 as you know it is worth more than this amount. I am asking $2,800 for the lot and $8,000 for the house and garage. So you see I would be making a great sacrifice to let it go for what I owe the Building and Loan Association. Will you make a final decision to-night or else do not charge me with any more fines." On August 28, the attorney wrote to Sheerin that his letter had been discussed at a meeting of the board of directors, that they rejected his proposition of a "split" mortgage, and could not make any arrange-

ment with him as to selling the property after it once became theirs, neither could they agree to a remission of fines. The letter then stated: "There are three avenues open to you for settlement of this case: First, Pay up the arrearages and continue to do so. Secondly, Foreclosure proceedings. Third, Deed the property over to the Building and Loan without any reservation." Admittedly, this letter was authorized by the association. On September 25 defendants conveyed the premises to plaintiff. Five days afterwards the latter entered judgment on the bond for the full penal sum. For several years no further action was taken, but when, in 1934, plaintiff issued a sci. fa. to revive the judgment, defendants obtained a rule to show cause why it should not be opened and they be permitted to defend. Depositions were taken. The court discharged the rule, without prejudice to the right of defendants, upon assessment of the damages, to have an issue framed to determine whether they were entitled to a credit in the amount of the withdrawal value of the shares originally transferred as collateral security. Defendants appeal.

The case was argued by counsel largely with reference to the technical inquiry whether a merger results when the mortgagee acquires title to the premises, and as to the way in which this question is affected by the mortgagee's intention and self-interest. In our opinion this is a misconception of the issue here involved. While under many circumstances the mortgagee's intention, actual or presumed, determines whether a mortgage lien is absorbed and the debt itself extinguished when title to the property is acquired by him, in the present controversy the question is not one, either legally or factually, of plaintiff's intention, but of the terms of the agreement made between its representative and defendants upon the basis of which the latter conveyed title. A unilateral intention cannot prevail over a contractual obligation. The property could have been deeded upon any terms and conditions mutually agreed

upon, and the sole problem here presented is to ascertain what those terms and conditions actually were.*

The execution of the conveyance of September 25 was evidently in response to, and conditioned upon, the terms of Mr. Riordan's letter of August 28. Plaintiff stresses the fact that according to that letter the property was to be deeded "without any reservation." That phrase, however, apparently meant that there was to be no implied retention by defendants of any interest, equity, or rights of any kind in the property itself. In Sheerin's letter of August 26 he had not only asked plaintiff not to sell the property for less than $8,000, but had also suggested that he would "pay the interest for rent," thus impliedly negotiating for a lease. It was these proposals that plaintiff rejected in stipulating that the conveyance was to be "without any reservation." Those words would not seem to have any bearing upon the question of what effect the conveyance was to have upon the continuance of liability on the bond.

The sentence in the Riordan letter of controlling significance is: "There are three avenues open to you for *settlement of this case.*" It is clear that the conveyance of the property—which was one of the designated "ave-

---

* That the question whether the debt is extinguished if title is deeded to the mortgagee (or when a mortgagee enters satisfaction of the mortgage on the record) must usually rest for its determination upon the agreement between the parties, is illustrated by such cases as *Fleming v. Parry,* 24 Pa. 47; *Safe Deposit & Trust Co. v. Kelly,* 159 Pa. 82; *Continental Title & Trust Co. v. Devlin,* 209 Pa. 380; *Sheehan B. & L. Assn. v. Scanlon,* 310 Pa. 6; *Murphy v. Zingaro,* 82 Pa. Superior Ct. 509; *Longacre v. Beers,* 106 Pa. Superior Ct. 57. See also 95 A. L. R., Annotation p. 89 et seq. It may be pointed out that, just as a sheriff's sale on foreclosure extinguishes the mortgage but not the indebtedness on the bond, which may still be recovered by a deficiency judgment, so, even if a mortgage lien be extinguished by merger resulting from a voluntary conveyance of the title, this would not necessarily operate as a release of the obligation on the bond unless it was agreed by the parties that the conveyance should have that effect.

nues"—was to operate as a "settlement of this case." The question then arises as to the meaning of these words. Did the "settlement of this case" involve merely an abandonment of threatened foreclosure proceedings on the mortgage, or a release of the bonded indebtedness? Clarification and interpretation being required of a phrase not sufficiently self-revealing, the rules of evidence permit resort to antecedent conversations between the parties, in order that thereby light may be cast upon the scope the negotiations were intended to cover and the objective they were designed to attain. According to Sheerin, his oral proposal to Riordan had been "to deed the property *for the amount that we owed.*" Riordan himself did not testify and his version of the conversation is lacking on the present record. It would appear, therefore, that defendants have produced sufficient evidence that the conveyance of the property was to be in "settlement of this case," and that by "settlement of this case" the parties meant a settlement of the indebtedness on the bond, to require the opening of the judgment and enable defendants to submit their defense to a jury. It may be added that it is quite incredible, in view of the letter of August 26 in which Sheerin states that he was asking $2,800 for the lot and $8,000 for the house and garage, that he should have been willing unconditionally to surrender so large an equity in the property, whereas, if he had suffered foreclosure proceedings to be instituted, he might at least have had the chance of obtaining a substantial credit on the debt through competitive bidding at the sheriff's sale, especially when it is remembered that this transaction occurred in 1929, when real estate values had not yet succumbed to the economic depression.

The order of the court below is reversed, and the rule to open the judgment is reinstated and herewith made absolute.