## Segreti, Exr., Appellant, *v.* Frisk et ux.

Argued October 5, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Milton Selkovits,* for appellant.

*George W. Lucas,* with him *Homer H. Swaney,* of *Swaney & Lucas,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, November 12, 1937:

This is a proceeding by scire facias to revive and continue the lien of a judgment. The issue is: Has a judgment, entered on a bond accompanying a mortgage, been discharged by reason of the fact that the mortgagee has become the owner of the fee? The court below held the judgment was discharged and entered judgment for defendants. Plaintiff appeals.

Spade and wife conveyed a property to Frisk and wife on March 26, 1929, and as part of the consideration accepted a bond and mortgage from the vendees for $2,500. The mortgage was subject to a prior one of $2,000. January 12, 1931, Frisk and wife conveyed the property to Reda, the deed containing this clause: "This conveyance is subject to a mortgage of $4,500 which grantee agrees to accept." There is no evidence that Spade, surviving obligee, had knowledge of the conveyance to Reda when he entered the judgment on the bond on April 20, 1931. Reda and wife conveyed the premises to Spade on May 20, 1931, for one dollar and other good and valuable considerations. May 26, 1931, Spade conveyed to Magliocco. July 7, 1931, Spade released the property from the lien of the mortgage. The release contains the statement "otherwise the mortgage is in no manner affected." Spade died May 27, 1935, and his executor, Segreti, caused scire facias to be issued on the judgment against Frisk and wife, to which the latter, in substance, answered that the conveyance by Reda to Spade extinguished the mortgage debt and operated as a satisfaction of the bond accompanying the mortgage and the judgment entered thereon.

To sustain their position appellees rely largely upon what was said in *Landis v. Robacker,* 313 Pa. 271, 275, 169 A. 891: ". . . where one who holds a mortgage,

either as mortgagee or assignee, becomes the purchaser of the land covered by the mortgage, the latter is merged in the title. The mortgage is extinguished by law. . . . It has been stated, however, that merger is a question of intention, and where the intention is to keep the mortgage alive there will be no merger [citing cases] but such intention must be manifest from the surrounding circumstances."

From this language appellees' counsel argue, that where one holding a mortgage subsequently becomes the purchaser of the land covered thereby a merger results, and the mortgage debt is extinguished by law, except that the parties "by agreement" may keep it alive. This overstates the ruling, even if the cited case was controlling in principle of this one. Here we are not dealing with the merger of a mortgage in the fee, but with the claim of the discharge of a judgment entered on a bond accompanying a mortgage, by the coalescence of the mortgage and the fee in the judgment creditor.

The legal principles governing transactions in real estate, where an extinguishment of the debt resulting from a merger of a mortgage in the fee is set up, have received our consideration in a number of cases, some of them quite recent. "The principle of law which provides that where the holder of a mortgage purchases the fee such purchase operates as a payment of the mortgage debt would seem to apply only where it is the intention of the parties that the purchase should so operate": *Sheehan B. & L. Assn. v. Scanlon,* 310 Pa. 6, 9, 164 A. 722, 723. "Discharge of a mortgage obligation by merger of the legal and equitable titles depends upon the intention of the mortgagor and mortgagee at the time of the alleged merger": *Golder v. Bogash,* 325 Pa. 449, 188 A. 837. "A further reason why the conveyance to [the mortgagee] did not effect a merger of the fee and his interest in the mortgage and bond is that the record discloses no evidence of intention to secure this result": *Sparrow v. Mowers,* 315 Pa. 460, 463, 173 A. 273.

As bearing upon the concrete question which we are to determine whether the judgment here in question was discharged by the coalescence of the mortgage and the fee, what we said in *Lansford B. & L. Assn. v. Sheerin,* 325 Pa. 474, 477, 190 A. 901, 902, has a strong bearing: "It may be pointed out that, just as a sheriff's sale on foreclosure extinguishes the mortgage but not the indebtedness on the bond, which may still be recovered by a deficiency judgment, so, even if a mortgage lien be extinguished by merger resulting from a voluntary conveyance of the title, this would not necessarily operate as a release of the obligation on the bond unless it was agreed by the parties that the conveyance should have that effect."

In those instances where all that appears is that the owner of the fee becomes the owner of a mortgage thereon, it will be presumed that an intention was present to merge the mortgage in the fee, and so far as the property bound by it is concerned the mortgage will be discharged.

It is easy to understand how the holder of a second purchase-money mortgage, which this one was, would reacquire the fee and to enable a sale to be made of the property agree to release it from the lien of the mortgage, relying upon the judgment which he had entered on the bond, to secure him because of its lien on other property of the debtor. Here the fact that Spade, when he sold the property, released it from the mortgage instead of entering satisfaction upon it, and in the release stated that the mortgage was in no way affected, gives some color to the conclusion that he did not intend a merger and wished to keep the judgment alive.

On behalf of appellant, it is urged that no testimony of a clear and concise character is offered, on behalf of defendants, that there was any intention on the part of Spade that the debt should be discharged. The only testimony to show such an understanding between Reda and Spade was that given by Reda, who, in answer to a

question as to what were the circumstances under which he conveyed title, answered: "There was some back interest to pay. They came around and asked me if I would give them a deed back he would be out of the old trouble and square everything up, I was willing to give deed back. They took the deed and make deed the way they wanted it. I and my wife sign it and they took deed, and I don't know anything about it any more." This is too indefinite language upon which to base the conclusion that Spade agreed to an extinguishment of the debt. It would support the conclusion that as between him and Reda, he agreed to consider the arrears of interest squared up, but we are not dealing with the situation between Spade and Reda, but with that between Spade and the Frisks.

We have concluded that under the circumstances as they appear in the record, which is a somewhat meager one, it was error for the court to give binding instructions for defendants, nor do we think on the record as it stands it would be proper to enter judgment for plaintiff. We are of opinion that a new trial should be granted in order that more light may be shed upon the intent of the parties when Reda conveyed the property to Spade, and upon the reason that Spade may have had to keep the judgment against Frisk and his wife alive.

Judgment reversed, with a new venire.