**STOKES v. COMMISSIONER OF INTERNAL REVENUE.**

**BENSON et al. v. SAME.**

**STRAWBRIDGE v. SAME.**

**LOW v. SAME.**

**No. 7598–7601.**

Circuit Court of Appeals, Third Circuit.

Nov. 28, 1941.

---

336

Ernest Scott, of Philadelphia, Pa. (Clement J. Clarke, Jr., and Thomas Stokes, all of Philadelphia, Pa., on the brief; Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., of counsel), for petitioners.

Arthur A. Armstrong, Spec. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, CLARK, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

These cases, consolidated for review in this court, involve the question whether a loss on the disposition of a capital asset was an ordinary loss or a capital loss subject to the limitations of § 117(d) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, page 708.

In 1927 the taxpayers, together with two other persons, purchased certain real estate in Philadelphia, subject to a $500,000 mortgage, and took title in the name of a straw man. Part of the purchase price was paid by giving a second mortgage for $250,000 on the property. In 1929 a new mortgage was given for $650,000, which,

together with $100,000 contributed by the owners, was used to pay the two old mortgages. The new mortgage was executed in the name of a straw man and the taxpayers did not become personally liable thereon. On December 15, 1932, the taxpayers had decided to invest no more money in the property and wrote to the mortgagee offering either to surrender the property to the mortgagee giving it a deed to be recorded in 1932, or to retain title upon the following terms:

"(a) All of the net rents now on hand and all net rents received by the agents for the property during the year 1933 over and above the actual cost of operating the building, and cost of fire and liability insurance, shall be turned over to you, to be applied to payment of taxes and water rent, and any surplus to mortgage interest.

"(b) You will pay the 1933 water rent and taxes, and fire and liability insurance, and hereby indemnify us from any liability for the payment thereof.

"(c) You will write a letter to H. LeRoy Webb and Thomas Evans, who now hold title to the premises, agreeing to indemnify them from any liability for payment of 1933 taxes and water rent.

"(d) If at any time during the year 1933 we desire to surrender the property to you, you will accept a deed for it and have it recorded during the year 1933.

"(e) If we do not surrender the property to you during the year 1933, the extension agreement of November 17, 1931 shall remain in force, unless modified by mutual agreement, but all arrears of mortgage interest due May 17, 1933 and November 17, 1933, will be waived by you.

"(f) This agreement shall not be construed in any way as imposing any personal liability on us or any of us for payment of either principal or interest of said mortgage, all such personal liability being hereby expressly disclaimed by us and by you."

The mortgagee accepted the second alternative. When the same proposition (except, of course, for change of dates) was renewed on December 5, 1933 for the coming year 1934, the mortgagee again chose the second alternative. In November of 1934 title was conveyed to the mortgagee. The mortgagee paid the city and school taxes for 1933 on March 21, 1933 and those for 1934 on February 28, 1934.

Was the loss sustained by the taxpayers upon the disposition in 1934 of what is agreed to be a capital asset an ordinary loss, or a capital loss subject to the limitations of § 117(d) of the Revenue Act of 1934?[1] Preliminarily attention must be focused on the fact that the limitations of § 117(d) apply only to a sale or exchange.

If a mortgagor who is not under personal obligation on the mortgage debt, executes and delivers a deed to the mortgaged premises, and the mortgagee accepts such a deed, without paying or promising to pay anything therefor, the transaction is not a sale or exchange. Polin v. Commissioner of Internal Revenue, 3 Cir., 1940, 114 F.2d 174; Camden Stores, Inc. v. Commissioner of Internal Revenue, decided September 4, 1941, B.T.A., CCH Dec. 12,056-F. Suppose that the mortgagee has agreed, under seal, to accept a deed from such mortgagor, if, within a given period, the mortgagor pleases to give it. Within the period specified, the mortgagor gives the mortgagee the deed. This transaction seems with equal clearness neither a sale nor exchange. The mortgagor gets nothing for his conveyance in the one case, any more than the other. Then suppose that the mortgagee, for $100 paid him by the mortgagor, agrees to accept the deed if tendered; other facts as in the case before. The substitution of a pecuniary consideration for the seal does not change the transaction to a sale or exchange. The last instance is, in substance, the set of facts of the instant case. The mortgagee agreed, in 1933, to pay the taxes and insurance, and accept a deed if the mortgagor chose to execute and deliver it during 1934. The mortgagor agreed that the mortgagee was to receive the rents from the property. But he did not agree to give a deed, and there was no assurance in fact that he would do so. He had not, under a similar contract, in force the year before, chosen so to do. Whether he would make the conveyance in the succeeding twelve months depended entirely upon his pleasure and convenience. In either event, nothing further was coming to him from

---

[1] "(d) Limitation on Capital Losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges * * *."

the mortgagee. And if, as a last resort, it is urged that being rid of a piece of real estate which is a source of burden instead of benefit is a sale, then every transfer is equally within the terms of the statute, and "sale or exchange" must be taken to mean "sale or any other transaction by which an owner divests himself of property". A court is not privileged thus to rewrite legislative language, even though it might think such substitutions better carry out the policy than the language actually used by the lawmaking body.

The argument for the Commissioner raises a further contention by which we are invited to find the consideration to treat this transaction as a sale or exchange. It is a contention raised for the first time in this court. We are invited to assume, in the absence of factual proof: (1) that the 1934 straw men became liable upon the bond at the time of the conveyance to them; (2) that the mortgagee at the time of the conveyance to it simultaneously released and returned the bond and (3) possibly the straw men were agents for the taxpayers and hence they were liable as disclosed or undisclosed principals.

Then an undisputed legal proposition is added as frosting to the layer cake, to the effect that consideration may move to a third person, Restatement, Contracts, § 75(2), and out of this mixture of assumptions a sale or exchange appears.

██ None of this has the ring of reality to one who knows only a little of Pennsylvania mortgage law and practice. Sheean B. & L. Assn. v. Scanlon, 1933, 310 Pa. 6, 164 A. 722; Lansford B. & L. Assn. v. Sheerin, 1937, 325 Pa. 474, 190 A. 901; Segreti v. Frisk, 1937, 328 Pa. 82, 194 A. 895. And in Pennsylvania it is not to be disputed that a beneficial owner is not liable on the bond of a straw party, Ottman v. Nixon-Nirdlinger, 1930, 301 Pa. 234, 151 A. 879.

Furthermore, it does not appear that a release of straw parties was bargained for when the security was surrendered. In paragraph (c) of the agreement under which the taxpayers remained in title, they bargained for a release of the straw parties from liability for taxes and water rent. No such arrangement was entered into in conjunction with the surrender of the property. In addition, a letter of the taxpayers of September 17, 1934 (Joint Exhibit F-6), showed an intention to surrender the property and an assent to the mortgagee proceeding with foreclosure if it so desired. The straw parties are referred to in that letter but not a word is said as to their release on the bond. In answer to this letter the mortgagee by letter of October 15, 1934 (Joint Exhibit G-7), agreed to accept a voluntary conveyance, again not a word was said as to release of liability on the bond. Under such facts it cannot be successfully contended that a bargain was made with reference to the release of the straw men. If no such bargain was made, the surrender of security is not converted into a sale or exchange by any assumption, correct or otherwise, that the law implied a release because of the surrender.

It is contended on behalf of the Commissioner that the case is governed by Helvering v. Nebraska Bridge Supply & Lumber Co., 1941, 312 U.S. 666, 667, 61 S. Ct. 827, 85 L.Ed. 1111, which follows Helvering v. Hammel, 1941, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481, and Electro-Chemical Engraving Co., Inc., v. Commissioner of Internal Revenue, 1941, 311 U.S. 513, 61 S.Ct. 372, 85 L.Ed. 308. Each of these cases, however, involved a sale, i.e. a foreclosure sale or a tax sale; the only issue being whether such forced sales were outside the contemplation of Congress in referring to sales. Thus the Supreme Court in the Hammel case concluded (311 U.S. at page 510, 61 S. Ct. 371, 85 L.Ed. 303, 114 A.L.R. 1481): "We can find no basis in the language of the Act, its purpose or its legislative history, for saying that losses from sales of capital assets under the 1934 Act, more than its predecessors, were to be treated any differently whether they resulted from forced sales or voluntary sales."

▪█ In this case we have no sale, forced or otherwise. We have merely a surrender of the security to the holder of the mortgage bond. True, Congress by § 117(f) of the Revenue Act of 1934 has seen fit to change the law by treating receipts "upon the retirement of bonds" as "amounts received in exchange therefor", McClain v. Commissioner of Internal Revenue, 1941, 311 U.S. 527, 61 S.Ct. 373, 85 L.Ed. 319, but that does not mean that every surrender of property by a taxpayer is to be treated as a sale or exchange. Cf. Helvering v. Wm. Flaccus Oak Leather Co., 1941, 313 U.S. 247, 61 S.Ct. 878,

85 L.Ed. 1310. This case has points of similarity with Aberle v. Commissioner of Internal Revenue, 3 Cir., 1941, 121 F.2d 726. But it is also sharply different, for there the mortgagor got indemnity from a personal liability to which he was subject, as part of his bargain.

It does not help the Commissioner to say that the taxpayers are in the same position whether they surrender the property or whether it is taken from them by foreclosure sale. "The answer", in the words of Mr. Justice Roberts in the Mc-Clain case, supra [311 U.S. 527, 61 S.Ct. 375, 85 L.Ed. 319], "is that we must apply the statute as we find it, leaving to Congress the correction of asserted inconsistencies and inequalities in its operation."

The decisions of the Board of Tax Appeals are reversed.