## Kociuba v. Stubnitz Greene Corporation

*Robert L. Pinto*, for plaintiff.
*Arthur Levy*, for defendant.

DIGGINS, J., October 9, 1964.—This matter which is now before the court arose by virtue of plaintiff's petition to compel defendant corporation to submit an alleged grievance [wrongful discharge] to arbitration. . . .

### FINDINGS OF FACT

1. Plaintiff, Julia Kociuba, is 60 years of age, neither reads nor writes English, resides at 723 Madison Street, Chester, Pa., and was an employe of Stubnitz Greene Corporation and a member of Union Local 224 of the UAW-AFL-CIO at the time this controversy arose in August, 1960.

2. Plaintiff was employed by defendant, Stubnitz Greene Corporation, Reynolds Spring Division, for 11 years.

3. Plaintiff was absent from work for a two-week period beginning June 6, 1960, by reason of a vacation.

4. At the expiration of plaintiff's two-week vacation, she did not return to work because of illness which occurred during the vacation.

5. Plaintiff forwarded doctor's certificates regarding her illness to defendant company.

6. On July 22, 1960, plaintiff, at defendant's request, reported for a medical examination performed by Dr. Martin Sedja. As the result of the examination, the Pacific Mutual Life Insurance Company informed plaintiff by letter dated July 28, 1960, that Dr. Sedja stated that plaintiff would be able to return to work on August 5, 1960, and that her disability benefits were payable to that date.

7. Plaintiff failed to return to work on August 5, 1960; nor did plaintiff report to work at any time thereafter.

8. Plaintiff's employment was apparently terminated by defendant on or about August 5, 1960.

9. Plaintiff received no notice of discharge or notice of any kind directly from defendant company with regard to the termination of her employment.

10. Plaintiff heard of her discharge from Vladimira Mychajliw, a fellow employe at defendant company, and asked her to inquire of the union regarding same.

11. Plaintiff was sick in bed at that time and was unable to act on her own behalf.

12. Mrs. Mychajliw contacted Laura Domiak who was her shop steward, and then contacted Mr. John Mitchell who was a union business committeeman and financial secretary of the union.

13. Mr. Mitchell indicated that he would investigate the matter and reported that he had done so.

14. Mrs. Mychajliw spoke to Mr. Mitchell approximately three times near the end of August, 1960, and

she reported the progress to plaintiff. She then ceased to act as intermediary.

15. Plaintiff's son, Lubomyr Kociuba, customarily read correspondence coming to the house for his mother.

16. In the latter part of August, 1960, plaintiff's son learned from plaintiff that she no longer was employed by defendant company.

17. Plaintiff requested her son to contact Mr. Mitchell, union committeeman, with respect to her employment status.

18. In the early part of September, 1960, plaintiff's son contacted Mr. Mitchell, union committeeman, at which time Mr. Mitchell informed him that plaintiff was no longer employed by defendant company.

19. In the middle of September, 1960, plaintiff's son contacted Jacob Woll, personnel manager of defendant company.

20. Mr. Woll informed plaintiff's son, inter alia, that as the result of plaintiff not reporting to work she was no longer employed by the company.

21. At the request of Lubomyr Kociuba, Mr. Mitchell advised and agreed to take up plaintiff's matter at the company-union meetings.

22. On August 30, 1960, John Mitchell filed on behalf of plaintiff with defendant company and with the union a formal "Employee Grievance" alleging that the union considered plaintiff to have been wrongfully discharged and requested her employment be reinstated. Mr. Mitchell did not have the grievance form executed by plaintiff since he felt that the time for filing the grievance had expired.

23. Plaintiff's case was considered at three company-union meetings at which times the grievance was considered.

24. The minutes of the grievance committee meetings indicate that steps two and three of the grievance

procedure were generally taken with regard to plaintiff's grievance.

25. At a meeting conducted on September 1, 1960, defendant company and the union jointly disposed of plaintiff's grievance by dismissing the grievance, all of which was confirmed by a written disposition dated September 7, 1960.

26. The final disposition in writing by the company was received by the union on or about September 10, 1960. Mr. Kociuba learned of this disposition orally in approximately mid-September of 1960.

27. No written disposition of plaintiff's grievance was given to plaintiff.

28. The union determined not to process plaintiff's grievance to the next level of the grievance process, to wit, arbitration.

29. Plaintiff sent to defendant written notice dated October 19, 1960, and delivered October 24, 1960, stating plaintiff's intention to proceed to step four of the grievance procedure.

30. Defendant company and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America. Affiliated with the Congress of Industrial Organizations, and Local No. 224 of said International Union, entered into a written agreement dated February 20, 1960, the provisions of which are incorporated herein.

31. Article III, sec. 1, of the agreement between defendant company and the union provides a grievance procedure.

## DISCUSSION

The issue now before the court is singular, viz., whether or not arbitration is appropriate under the circumstances here presented. The merits of the grievance, per se, are not before the court.

Article VII of the agreement provides that defendant shall have the right to discharge employes for just

cause providing for certain notice to the union in the case of a failure to report within a given number of days after notice of call back from a layoff; the provision, however, is silent with regard to notice regarding a discharge for exceeding a leave of absence. On the other hand, article III, sec. 3, of the agreement provides that complaints alleging unjust discriminatory dismissals must be filed within 72 hours of the dismissal signed by the employe, and further that the union shall be notified one hour prior to discharge. Plaintiff's grievance was not signed by her and was not filed within the 72-hour period; however, no notice of the discharge was given to plaintiff at or about the time of discharge.

Article III, sec. 1, of the agreement provides, inter alia, that the defendant must note its answer to a grievance at the end of step two [the "step" terminology is that used in the agreement] and that a written disposition must be made by defendant no later than three days after the step two meeting. Neither of these requirements were met by defendant. On the other hand, article III, sec. 1, requires that notice of appeal to arbitration under step four must be given, in writing, within 30 days after the date on which the grievance was answered in writing at step three. Plaintiff's notice was given beyond the 30-day period.

In summary, plaintiff contends, inter alia, that because of defendant's failure to send a "required" notice of discharge to plaintiff, plaintiff is not held to a strict compliance with the provisions of the grievance procedure; that, nevertheless, plaintiff has substantially complied with the conditions of the agreement; that defendant itself has not strictly complied with the grievance and agreement procedures and engendered the original technical noncompliance by plaintiff, if any. On the other hand, defendant contends, inter alia, that the union processed plaintiff's claim and the

union mutually agreed with defendant to dismiss the grievance; that plaintiff failed to comply with the technical requirement of the agreement by failing to file the grievance form within 72 hours, by failing to sign the grievance, and by failing to give written notice of appeal from step three to step four within 30 days of the written disposition; and that plaintiff has no standing to request arbitration independently of the union.

In this latter regard, however, it is to be noted that article III, sec. 1, of the agreement provides that:

". . . the grievance or dispute shall be handled as set forth herein, except that the right of an employee to present his own grievance under the required grievance procedure, shall not be curtailed thereby."

It must be observed that this matter has been handled in an informal manner. Moreover, the agreement itself leaves much to be desired. Nevertheless, it is clear that the above facts and circumstances present questions of law, fact and mixed questions of law and fact, and in this regard, the weight and trend of authority leads to the conclusion that all issues here involved must be determined by the submission of the dispute to arbitration.

In Mack Manufacturing Corporation v. International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, 368 Pa. 37, at page 43, the court held:

"The grievance, however, is one contemplated by the agreement between the parties and therefore it is for the arbitrator to determine not only the substantive rights of the parties, but compliance with the proper procedural steps as well, since the procedure is also fixed by the agreement and there is a dispute over the interpretation of the agreement in that respect."

International Ladies' Garment Workers' Union, A. F. of L. v. Nazareth Mills Company, 87 D. & C. 589,

is also pertinent. In that case, it was concluded in ordering arbitration, inter alia, that the arbitrator alone had the authority to determine the substantive rights of the parties within the scope of the arbitration clause as well as questions of compliance with the procedural steps established by the agreement. Moreover, the court appositely said, at page 601:

"' "The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally" ': Patriotic Order Sons of America Hall Association v. Hartford Fire Insurance Co., 305 Pa. 107, 116, 117. See also Rosenbaum et al. v. Drucker et al., 346 Pa. 434; Goldstein et al. v. International Ladies' Garment Workers' Union et al., 328 Pa. 85, supra; Pierce Steel Pile Corporation v. Flannery, 319 Pa. 332; Britex Waste Company, Ltd., v. Nathan Schwab & Sons, Inc., 139 Pa. Superior Ct. 474."

In Association of Westinghouse Salaried Employees etc. v. Westinghouse Electric Corporation, 283 F. 2d 93, the court held:

"The same considerations apply to a minor question in the case regarding three of the grievances. The Company says that the Union made no request for arbitration following the Company's refusal to grant what the Union demanded in these three cases. Since the Union did not follow the provisions of the contract, the Company argues, these cases are not before either court or arbitrator for decision. The district judge said that these questions were also for the arbitrator. He was right. It is a fact to be determined whether strict pro-

cedural compliance was required by the parties' contract when a number of grievances arose concerning the same language of the contract and the Company denied the arbitrability of each. In addition, there is a doctrine in the law which has to do with the excuse which a party has in not following out the conditions of the contract when the other side has repudiated them. See Section 306 of the Restatement of Contracts. If the Company has repudiated what the Union claims is an obligation of the contract, then performance of procedural requirements could well be excused since the law does not require a party to do a useless act.

"This, too, is for the arbitrator. Were the circumstances under which the notice was not given such as to excuse the procedural requirement that it should be given? That is a question arising out of the contract and is part of the arbitrator's task to answer."

In Insurance Agents' International Union, A. F. of L. v. Prudential Ins. Co., 122 F. Supp. 869, the court, in applying Pennsylvania law, held that the question of whether a union's right to prosecute a grievance was lost by inaction was to be determined by arbitration as were the substantive rights of the parties.

Maryland Telephone Union v. Chesapeake & Potomac Telephone Co. of Md., 187 F. Supp. 101, is also analogous. There, in entering a decree requiring arbitration, the court held, at page 109:

"The Company notes that fourteen of the fifteen grievances were not filed within the time limits set forth in Part I. Article VIII, Section 1(c) of the Agreement. The one grievance which is admittedly timely is sufficient to raise the basic issues in this case. With respect to the others, there are involved questions of waiver and whether the grievance is based upon a single occurrence or a continuing course of conduct. These matters should be considered by the arbitrators."

Moreover, in United Cement, Lime and Gypsum

Workers' International Union, AFL-CIO, Local No. 55 v. Allentown-Portland Cement Co., 163 F. Supp. 816, the court held that where the arbitration provisions of a collective bargaining contract provided for proper procedural steps as well as arbitration on the substantive rights of parties, and where a dispute arose over the interpretation of the procedure set forth in the agreement, the question of whether the union followed the proper grievance procedure as therein provided was a question to be determined by the arbitration panel and not the court.

We, therefore, make the following

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. Plaintiff is entitled to have her grievance submitted to arbitration.

### Order

And now, to wit, October 9, 1964, the rule heretofore granted on November 27, 1961, to show cause why arbitration should not proceed in the manner provided in the hereinabove mentioned agreement from step 3 to step 4 be and the same is hereby made absolute.