LUTZ & SCHRAMM COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105761. Promulgated March 2, 1943.

*I. Willits McCaskey, Esq.*, for the petitioner.
*W. A. Schmitt, Esq.*, for the respondent.

684

OPINION.

Murdock, *Judge:* The Commissioner disallowed the deductions of additions to the reserve for bad debts for the reason that the balance in the reserve at the beginning of the first taxable year was adequate, but the information he gave in regard to the amount of that balance was erroneous. The petitioner introduced evidence showing the additions to its reserve as allowed by the Commissioner for its entire history, the amount of bad debts actually charged off against that reserve, net sales for all years, and accounts receivable at the end of each year. It seems proper to conclude that no amount was credited to the reserve during this period representing recoveries on debts previously charged off against that reserve. The evidence shows no such credits, and neither the Commissioner nor his counsel has taken the position that there were any credits to the reserve representing recoveries on debts previously charged off. The figures in evidence show that charge-offs had exceeded the additions to the reserve by $505.40 at the end of 1936 and that accounts receivable then outstanding amounted to $121 639.27.

The petitioner ceased operations in 1937 and at the end of that year its accounts receivable had declined to $30,440.66 and the bad debts actually charged off exceeded the previous allowances for additions to the reserve by $4,809.59. It is apparent that the Commissioner erred in failing to allow the petitioner deductions for some additions to the reserve for bad debts in these two taxable years. But it also appears from the facts now in evidence that the amounts claimed by the petitioner were excessive and that $5,000 is a reasonable addition for 1936 and $2,000 is a reasonable addition for 1937. These additions will leave the petitioner at the end of 1937 with a balance in its reserve of $1,685.01 to cover possible bad debts involved in its remaining accounts receivable in the amount of $30,440.66. Previous experience indicates that these amounts are proper.

Counsel for the Commissioner concedes that the petitioner is entitled to use the reserve method of claiming deductions for bad debts, and he also recognizes that the balance sheet reserve for bad debts at the beginning of 1936 in the amount of $20,346 is an immaterial factor since it is not the actual balance in the reserve for income tax purposes. He made a statement, after the close of the petitioner's case, in which he said that the petitioner had credited amounts to its book reserve in excess of the amounts claimed on the tax returns, and, at other times, had not credited to its book reserve the full amounts claimed. He then concluded:

Eliminating all of the erroneous debts and credits of the reserve [for] bad debts for tax purposes, the matter may be simply stated as follows, and I have a little summary: Reserve for bad debt as shown by books and tax returns as in August, 1924, $16,033.01; credits to reserve allowed as a deduction in tax returns for 1924 to 1937, inclusive, $114,615.39; total, $130,648.40, less debits charged against reserve from 1924 to 1937, $119,424.98. The correct reserve would be on December 31, 1937 $11,223.42.

He takes the same position in his brief. A comparison of the figures in the above statement with those in the first table in the findings of fact shows that the statement differs from the table only in that it starts with an original balance in the reserve of $16,033.01, an amount never claimed or allowed as a deduction on any of the returns.

Counsel for the respondent bases his case entirely upon the item of $16,033.01. The following appears among the assets in the opening balance sheet of the petitioner for August 19, 1924:

Accounts receivable_____ $172,086.67
Less reserve for bad debts_____ 16,033.01
                                                          _____
                                                          156,053.66

Counsel for the respondent assumes that the petitioner purchased $172,086.67 of accounts receivable for $156,053.66, or at a discount of

$16,033.01. Essentials of his argument are that the petitioner must have charged off some of these original accounts receivable; if it. charged off those accounts receivable at their face value instead of at their cost, the difference between cost and face value would have to be either included in the reserve for bad debts or deducted from the amount of bad debts charged off, in order to determine the balance in the reserve at any subsequent period; the petitioner might have charged off all of the $172,086.67 as bad debts; the evidence fails to show what part of those accounts were charged off; and, therefore, it is necessary to add the entire $16,033.01 to the amount of $2,882.23 to determine the balance in the reserve at the beginning of 1936.

While counsel for the Commissioner is sincere in his effort to sustain the determination of the Commissioner, it appears that he is proceeding upon a wholly new ground of his own conception rather than upon any ground which moved the Commissioner in arriving at the determination, or upon any doubt which might reasonably have existed in the mind of the latter at that time. The Commissioner made annual allowances for deductions representing additions to this reserve for bad debts for 12 years preceding these two taxable years. We must assume that he did so properly after being satisfied that there were no improper charge-offs of accounts receivable purchased at a discount. Any improper action of the petitioner with respect to those earlier years should have been corrected long ago. If there were any merit in this argument of counsel for the respondent, it could have been used with far greater force and effect to deny the petitioner deductions in those earlier years. Counsel for the petitioner never heard of it, so far as the present record shows, until his case in chief was closed. We think that it was not encumbent upon counsel for the petitioner to negative by proof all of the unfavorable assumptions which counsel for the respondent has made to support his argument.

The argument of counsel for the respondent is not supported by the facts in the record. The record does not show how the petitioner acquired accounts receivable in the amount of $172,086.67 which it had on its opening balance sheet of August 19, 1924, and it certainly does not show that the petitioner purchased those accounts for $156,053.66 or at any other discount. The respondent introduced in evidence as Exhibit D a sheet of paper bearing the caption: "Catherine Reedy, et al vs Lutz & Schramm Company, A Corporation, No. 679 July Term, 1923." The paper is undated and is not adequately explained. It is a balanced list of assets and liabilities under the heading "Exhibit 3 Attached to the Re-statement of First and Final Account of A. E. Slessman, Receiver, Showing Sale of Assets for $250,000.00." The receivership was the predecessor of this petitioner. A few of the items on the opening balance sheet of the petitioner correspond with

items shown on Exhibit D. But the two balance sheets do not show the same totals, do not carry the same items, and are not reconcilable. There is no reserve for bad debts shown on Exhibit D. The total of accounts receivable shown thereon is $142,027.89. There is nothing in the two exhibits taken together, or in all of the evidence in the case, from which one could fairly infer that the petitioner purchased accounts receivable at a discount. There is nothing in the record to indicate the extent, if any, to which the charges to the reserve account shown in the first table in the findings of fact represent charge-offs in respect to the original accounts receivable. But obviously not all of the $172,086.67 was charged off, since the total amount of all accounts receivable charged off in 14 years was only $119,424.98. There is nothing in the record or in the determination of the Commissioner to suggest that the petitioner has ever charged off a bad debt at more than cost or that it has made an improper charge-off of any kind. It is our conclusion, under all of the facts and circumstances of this case, that the petitioner is entitled to deductions of $5,000 for 1936 and $2,000 for 1937 as reasonable additions to its reserve for bad debts.

The petitioner reported a gain of $42,564.58 for 1937 resulting from the surrender of its remaining real estate to the Crawford estate in satisfaction of a mortgage of $300,000 on that property. The petitioner contends that it erred in this and that the Commissioner should correct the error by eliminating all of the gain. The property was acquired on August 19, 1924, from a predecessor company, and the mortgage was not placed upon it until January 2, 1925. We, therefore, conclude that the petitioner borrowed the money from Crawford and used it for its own purpose and benefit.[2] The amount of depreciation deductions allowed or allowable on the property while it was held by the petitioner does not clearly appear. However, the parties make no issue about any of the figures.

The statute provides that the gain from the disposition of property shall be the excess of the amount realized over the adjusted basis. The amount realized is defined as "the sum of any money received, plus the fair market value of the property (other than money) received." Sec. 111, Revenue Act of 1936. The petitioner disposed of its property in 1937, and the question is to determine the amount of gain, if any, which it had upon that transaction. The net result of the transaction was that the petitioner received $300,000 for its property. The $300,000 was received by the petitioner in 1925, but the taxable transaction took place in 1937 when the petitioner trans-

---

[2] Cases like *Stokes v. Commissioner*, 124 Fed. (2d) 335; *Fulton Gold Corporation*, 31 B. T. A. 519; *Commonwealth, Inc.*, 36 B. T. A. 850; *Dallas Transfer & Terminal Warehouse Co. v. Commissioner*, 70 Fed. (2d) 95; and *Helvering v. Killian Co.*, 128 Fed. (2d) 433, are not in point.

ferred the property to the creditor in discharge of a debt of $300,000. Since the figures are not in dispute, we conclude that this resulted in a gain in the amount reported by the taxpayer.

The petitioner argues against this result by calling attention to the fact that the fair market value of the property was only $97,000 at the time of the transfer in 1937, and to the fact that in 1934 the creditor had agreed to look only to the property covered by the mortgage in enforcing his rights for repayment of the debt. The fair market value of the property transferred is immaterial under the provisions of the revenue act in the computation of gain or loss from the disposition of the property. Likewise, it is immaterial that the petitioner was released from personal liability for the repayment of this debt in 1934. This petitioner was not insolvent and the question is not whether it realized income from the discharge or forgiveness of indebtedness, cf. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Lakeland Grocery Co.*, 36 B.T.A. 289; but is rather whether it realized gain from the disposition of a piece of real property. There is no question of the fact that the petitioner had received and used for its own benefit the $300,000 and the only repayment it made on this part of the debt was the transfer of the property. The debt was finally satisfied by that transfer. The petitioner's release from personal liability in 1934 was not a taxable transaction although that release may explain in part why the creditor was willing to take property worth only $97,000 in satisfaction of a debt of $300,000. The fact remains that the taxable transaction took place in 1937, and the net result of it was that the petitioner, over a period of years, had enjoyed the full benefit from the receipt of $300,000 by transferring a property which had a basis in its hands for gain or loss of only $257,435.42. The petitioner has failed to demonstrate that it did not realize the gain which it reported.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

DISNEY, *J.*, dissenting: The majority opinion so misplaces the burden of proof, that I must dissent. The Commissioner in the deficiency notice, determined, separately for each year, that the balance in the reserve for bad debts, at the close of the previous year, was adequate and that no addition to reserve was warranted. It has long been settled that correctness of the Commissioner's result, and not his explanation, is the issue. *Edgar M. Carnrick*, 21 B. T. A. 12; *Charles J. O'Laughlin*, 30 B. T. A. 1327; *Southern Railway Co.* v. *Commissioner*, 74 Fed. (2d) 887. But it is not necessary in this case to rely on that principle, for it is apparent from the entire record that the

adequacy of the existing reserve was in question and therefore examination thereof required, and that the issue arose merely because of a difference in views as to what was necessary to show the condition and amount of existing reserve. The petitioner was in nowise surprised by a view tardily taken by the respondent. It nowhere so contends, and the petition shows the then existent conflict of view when it is alleged:

Petitioner avers that in considering the propriety and reasonableness of a deduction claimed as an addition to its bad debt reserve the size of the reserve at the time of making such addition is to be determined by the sum total of the deductions claimed for such purpose in previous income tax returns minus the actual charge-offs for bad debts over said periods, and is not to be arrived at by taking the sum total of the amounts which may have been added by petitioner to a reserve account for bad debts on its own books over said period and subtracting therefrom the actual charge-offs for said period.

In other words, the petitioner did not agree with the Commissioner's idea of examining into and explaining reserves appearing on its books, but insisted that it was only necessary, in order to arrive at the reserve on hand, to deduct the total actual charge-offs from the total deductions "claimed." Obviously "allowed" was meant. (In fact the petitioner did not even attempt to meet the requirement so suggested by itself, for at trial, for reasons unexplained, in introducing its returns in evidence, it stopped short with the year 1934; to be more accurate, after offering the income tax return for 1935, petitioner's counsel withdrew the offer, stating, "I meant to stop with the calendar year 1934." Thus it is plain that the petitioner never, in fact, showed the condition of its reserve at the end of 1935, the year next preceding the taxable years. The respondent placed the return for that year in evidence, as well as those for 1936 and 1937.) I think that the record here clearly calls for more candor by the petitioner. Its income tax returns showed accounts receivable on hand at the date of its organization, thus showing them to have been purchased or acquired otherwise than by its own business operations; and, further, showed a reserve for bad debts set up against them. The cost does not appear. The essence of the respondent's position is that, since purchased accounts receivable must be handled on a basis of cost, such a record requires clarification, as to whether such accounts receivable were so treated, as otherwise improper charges against reserve would result. I find no reason to excuse the petitioner from such explanation. The true state of the reserve at the beginning of the taxable years depended upon the treatment of accounts receivable, affirmatively appearing as not created by the petitioner, and commingled with own-created receivables—with the income tax return for petitioner's first year disclosing petitioner's estimate that $16,033.01 were bad, in that a

reserve in that amount for bad debts was set up. I am unable to follow the reasoning of the majority opinion that we should assume that allowances for reserve made by the Commissioner in previous years were made after he was satisfied that there were no improper charge-offs of accounts receivable purchased at a discount. On the contrary, we should assume the correctness of the Commissioner's determination, and put the burden on the petitioner to show why it is not correct. The petitioner produced some of its books "because all of the books of the company would be too voluminous to bring over." Some of its records were "in such bad shape that they are not readily accessible." I find no reasonable effort to meet the burden of showing the Commissioner's determination to be erroneous; and in its reply brief the petitioner never mentions the arguments made by the respondent, in his brief, on this point. Yet, the majority opinion dwells upon the dearth of evidence—particularly as to Exhibit D. That instrument was, however, placed in evidence upon the particular announcement of "No objection" by the petitioner, and in no degree has the petitioner ever questioned the accuracy of the figures placed in evidence by the respondent, and relied upon by him. Unless a mere showing of items of charge-off and allowed deductions for reserve is sufficient to fix the amount of reserve on hand, against a contrary determination and in the face of a book record replete with confusion, I believe that the petitioner should have explained.

To say the least, it should have explained the fact shown by the record, that it credited to its bad debt reserve $6,366.77 in 1936 and $3,508.40 in 1937. Both amounts are considerably greater than the deductions for reserve approved by the majority opinion, and, on the theory of the majority opinion itself, demonstrate (if these credits are not to be wholly disregarded and the petitioner relieved of explanation, even in the taxable years) that at the end of the year 1936 the petitioner may have had an actual reserve of $5,861.37 (the difference between the credit to reserve, $6,366.77 and −$505.40 shown in the majority opinion as the reserve at the end of 1936) and in the same way, at the end of 1937 petitioner may have had a reserve of $5,065.58, and thus no additions would be necessary—for these credits may have been recoveries upon bad debts charged off in previous years. Nevertheless, the petitioner has offered no more explanation of these items than of the earlier condition of its books. I dissent.