## PARKER v. DELANEY.
### No. 4519.

United States Court of Appeals
First Circuit.

Dec. 28, 1950.

456

Edward C. Thayer, Boston, Mass., for appellant.

Mamie S. Price, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Sp. Assts. to Atty. Gen., George F. Garrity, U.S. Atty., and Philip T. Jones, Asst. U.S. Atty., both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and FAHY,* Circuit Judges.

FAHY, Circuit Judge.

Appellant [1] paid a federal income tax for 1945 on the basis of a long term capital gain which he then thought he had realized from the disposition of certain apartment houses during that year. Thereafter, becoming of a different view, he applied for refund of the amount paid. Six months having elapsed without action on his application he brought suit in the District Court against the Collector of Internal Revenue, as authorized by United States Code Annotated, Title 28, § 1340. He appeals from judgment rendered for the Collector.

The essential facts were stipulated. In 1933, 1934 and 1936, taxpayer made arrangements with two banks to take over and manage four apartment house properties held by the banks after foreclosure proceedings. The same general factual pattern of transactions applies to each property. It was deeded by the bank to a straw man who acted for taxpayer. The straw gave the bank a note in a stated amount secured by a first mortgage on the property. He gave taxpayer second mortgages on each of the properties, and powers of attorney to operate the same. He also gave the taxpayer a deed to each of the properties, but these deeds were not recorded.

Appellant for tax purposes reported each year all income and took all deductions to which he would be entitled as owner, including deductions for depreciation. In 1945 the mortgages were in default and by agreement the banks took back the properties, the straw giving quitclaim deeds. The second mortgages upon such

---

* Circuit Judge, District of Columbia Circuit, sitting by special designation.

1. The transactions involved were those of a partnership, to the full interests of which taxpayer has succeeded. For convenience the transactions of the partnership are referred to in this opinion as those of the taxpayer, sometimes also referred to as the appellant.

properties were discharged of record. In his federal income tax return for 1945 appellant stated the sale prices to the banks to be the face amounts of the mortgages at the time of the conveyances to the banks. He reported the excess of these amounts over the amounts of the mortgages when he acquired the properties, less depreciation, as a long term capital gain.[2]

Appellant's position essentially is that he realized nothing when the properties were reconveyed to the banks in 1945 and so there was legally nothing to tax as a gain under the applicable provisions of the Internal Revenue Code. These provisions are §§ 111 and 113. The former reads as follows:

"(a) *Computation of gain or loss.* The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

"(b) *Amount realized.* The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." 26 U.S.C.A. § 111.

That there was a disposition of the properties by appellant in 1945 seems clear. The quitclaim deeds to the banks, though executed by the straw man, covered properties to which title had been conveyed to appellant though the deeds to him were unrecorded. The straw acted for him in transferring the properties to the banks. Appellant had regularly reported for tax purposes all income and had taken all deductions, including those for depreciation, to which he would be entitled as owner. The serious question is not whether there was a disposition within the meaning of § 111, as to which we are clear, but whether a gain was realized from such disposition. To state this question by paraphrasing subparagraphs (a) and (b) of § 111 with § 113 (b), referred to in the former, the question is whether taxpayer received from his disposition of the apartment houses money or other property of a value in excess of the amount of their adjusted basis, that is, in excess of the cost of the properties less depreciation. [3]

In applying the foregoing formula to the facts we may conveniently consider first the question of the cost of the properties to appellant. During the years of his operation of them he took deductions for depreciation on a cost basis equal to the amount of the first mortgage liens. In this court he expressly disclaims any contention that their value for depreciation purposes was less than those liens. These mortgages represented the prices paid, or the consideration, for the properties. The properties became subject to these liens and appellant considered them as the cost in deducting depreciation. Nothing appears to the contrary and we must, as did the court below, accept these figures of cost used by appellant. Indeed we do not understand him to dispute this treatment of the cost question.

The depreciation deductions, taken on the basis discussed above, amounted to $45,280.48. We come to the time of disposition, therefore, with that amount having been set aside from gross income and put in capital account for replacement purposes, the justification for permitting depreciation deductions in computing taxable

---

2. The first mortgage liens totaled $273,000 at the time of appellant's acquisition of the properties. During the period of his operation he paid on these mortgages a total of $13,989.38. He charged and deducted depreciation in the amount of $45,280.48. When, therefore, the apartments were conveyed to the banks in 1945 the gain was $31,291.10. The disputed tax resulted. It was paid on 50 per centum of the excess, namely, $15,645.55, as the amount upon which a tax on a long term capital gain is levied under § 117 of the Internal Revenue Code, 26 U.S.C.A. § 117. The tax and interest for which refund is sought amounted to $4,533.31.

3. Under § 113(a) and (b), read with Treasury Regulation 111, particularly Sec. 29.-113(b) (1)-1, thereof, the adjusted basis for determining gain from the disposition of property is, in so far as here material, the cost of the property decreased by the amount deducted for depreciation.

458

income. Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286; see, also, Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561. The adjusted basis in 1945 accordingly was $273,000 less $45,280.48, or $227,719.52. The question is whether more than this was realized from disposition of the properties in that year. If so it was taxable gain under § 113. It is here the real controversy arises. Appellant contends that he realized nothing or in any event nothing in excess of the adjusted basis of $227,719.52, though the amount of the mortgages then was $31,291.10 in excess of said adjusted basis. See footnote 2, supra.

The burden of deciding whether or not the last named figure was gain we think has been assumed by Crane v. Commissioner, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301. In that case there was a sale of improved real estate to a third party subject to the amount of the mortgage, plus $3,000 boot paid to the seller. The latter, like appellant here, was not personally liable on the mortgage. In the instant case the disposition was to the mortgagees instead of to a third party purchaser and no boot was paid.

In the Crane case the taxpayer contended that all she received was the boot, and that its amount, less expenses of the sale, was the amount of gain realized. But the Supreme Court held that the taxpayer received benefit in the amount of the mortgage as well as the boot. We see no logical or practical distinction which takes the present case out of the rationale of that decision. If the amount of the unassumed mortgage in the Crane case was properly included in the amount realized on the sale, the amounts of the unassumed mortgages should be held to have been realized on the disposition in this case. In both, such amounts had been considered in determining the unadjusted basis. Since in the Crane case taxpayer obtained the property by devise, the basis was the fair market value at the time of acquisition. § 113 (a) (5). In the case at bar the basis was cost. § 113(a). Depreciation had been computed and deducted on such amounts; and their relationship under § 113 to the

question of gain realized under § 111 requires that account be taken of such value or cost in determining the realization on disposition. Furthermore, the property in the hands of appellant was relieved at the time of disposition of the mortgage liens and obligations. So far as appellant was concerned as owner these were paid even though he was not personally liable for them. The matter was so treated in the Crane case, 331 U.S. at page 13, 67 S.Ct. at page 1054. The added factor there, not present here, that boot was paid over and above the mortgage, is not material so long as the value of the properties was not less than the liens. Boot served to show this in the Crane case, but the payment of boot is of course not the only means of showing whether or not value is equal to or more than the liens on the property disposed of.

This brings us to appellant's contention that in fact the value was less and the Crane doctrine accordingly does not apply. He points out that the Supreme Court, in such a situation, reserved decision: "Obviously, if the value of the property is less than the amount of the mortgage, a mortgagor who is not personally liable cannot realize a benefit equal to the mortgage. Consequently, a different problem might be encountered where a mortgagor abandoned the property or transferred it subject to the mortgage without receiving boot. That is not this case." Footnote 37, 331 U.S. at page 14, 67 S.Ct. at page 1054.

This statement is predicated upon a situation where the value of the property when disposed of is less than the mortgage. There is no evidence to that effect in this case. The District Court treated the value as equal to the mortgages and we have no basis for doing otherwise. The critical point is that the value equaled the mortgages, not that it exceeded them, and on this factual matter we must on the record support the conclusion of the District Court.

■ Appellant also contends that the property was abandoned to the banks and accordingly that there could be no capital gain within the terms of § 117, which govern the amount to be taxed as gain on the

sale or exchange of a capital asset. Commissioner of Internal Revenue v. Hoffman, 2 Cir., 117 F.2d 987, affirming 40 B.T.A. 459; Warner G. Baird, 42 B.T.A. 970; Stokes v. Commissioner, 3 Cir., 124 F.2d 335. Under § 111, however, the gain may be from the "sale or other disposition" of property and the property might not be a capital asset. The result is that while the tax of which refund is now sought was computed as though it had been a capital gain under § 117 (see footnote 2, supra) and not an ordinary gain, this advantage to the taxpayer does not alter the fact that a gain was realized within the meaning of § 111. We are not concerned with the computation of the amount to be taxed, that is, whether it was properly computed as a gain on the sale or exchange of a capital asset or should have been computed as an ordinary gain. The appellee Collector concedes that it is too late to make an additional assessment on the theory of ordinary gain. Accordingly it does not help appellant to term the transaction an abandonment if it was nevertheless a disposition within the meaning of § 111 upon which a gain was realized and if, as we hold, it was then of a value equal to the first mortgage liens. In these circumstances the unpaid amount of the liens is carried forward, as it were, from the time of acquisition to the time of disposition. They are treated as cost at the earlier time and so must be treated as value at the later time. The result in the end is that the taxpayer accounts to the taxing authorities for the gain realized by his deductions for depreciation in excess of his own investment.

The judgment of the District Court is affirmed.

MAGRUDER, Chief Judge (concurring).

I concur. The logic of the court's opinion is inescapable, with Crane v. Commissioner, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301, as the starting point.

As an original matter, I would have had some difficulty in understanding how the taxpayer in the Crane case realized more than $3,000 from her sale of the mortgaged property there involved, in view of the definition of "amount realized" in § 111(b) of the Internal Revenue Code. By the same token in the case at bar, under the more natural and obvious reading of § 111 (b), it would seem that the amount realized by the taxpayer herein was zero, when he caused his straw man to quitclaim to the banks, for no cash consideration, properties then subject to mortgages up to their full value, the taxpayer not being liable on the mortgage debt. To reach the conclusion that the taxpayer thereby "realized" the amount of the outstanding mortgage debt would seem to require a somewhat esoteric interpretation of the statutory language. Also, I do not clearly understand why the Treasury allowed the taxpayer deductions for depreciation, under §§ 23(l) and (n) and § 114(a), in the total amount of $45,280.48, taking the taxpayer's original "cost" basis as the amount of the mortgages, though he made no cash investment in the properties upon acquisition, nor did he obligate himself on the mortgage debt. But that matter need not concern us here, because depreciation in the amount of $45,280.48 was in fact "allowed"; and under § 113(b), the adjusted basis for determining gain or loss from the sale or other disposition of the property takes account of depreciation "to the extent allowed (but not less than the amount allowable)" under the income tax laws.

Perhaps the net result reached by the court here might be arrived at by another mode of computation with less strain upon the statutory language. Thus, the adjusted basis for determining gain or loss under § 113(b) might be computed as follows: Original cost, zero, plus $13,989.38, the total amount which taxpayer paid in reduction of the mortgage debt while he held the properties, minus $45,280.48, the amount of depreciation "allowed", which comes out to an adjusted basis of minus $31,291.-10. Now, apply that adjusted basis of minus $31,291.10 to the computation of gain or loss under the formula in § 113(a): The "amount realized" upon taxpayer's disposition of the properties, zero (as suggested above), minus the adjusted basis as computed under § 113(b), or in other words,

minus $31,291.10 subtracted from zero, comes out to a plus figure of $31,291.10, representing the amount of the taxpayer's gain, upon which the tax would be computed.