Gavin S. MILLAR, Appellant,

v.

COMMISSIONER OF INTERNAL REVE-
NUE.

(Tax Court Docket No. 5884–72)

John R. JAMISON and Suzon G.
Jamison, Appellants,

v.

COMMISSIONER OF INTERNAL REVE-
NUE.

(Tax Court Docket No. 5885–72)

Philip D. RODGERS and Elizabeth C.
Rodgers, his wife, Appellants,

v.

COMMISSIONER OF INTERNAL REVE-
NUE.

(Tax Court Docket No. 5888–72)

Philip R. JAMISON and Helen L. S.
Jamison, his wife, Appellants,

v.

COMMISSIONER OF INTERNAL REVE-
NUE.

(Tax Court Docket No. 5889–72)

James L. TENLEY and Betty J. Tenley,
his wife, Appellants,

v.

COMMISSIONER OF INTERNAL REVE-
NUE.

(Tax Court Docket No. 5892–72)

Robert K. CONRAD and Jane H. Conrad,
his wife, Appellants,

v.

COMMISSIONER OF INTERNAL REVE-
NUE.

(Tax Court Docket No. 5893–72)

No. 75–2296.

United States Court of Appeals,
Third Circuit.

Argued June 11, 1976.

Decided Aug. 12, 1976.

Edmund W. Ridall, Jr., McCann, Garland, Ridall & Burke, Pittsburgh, Pa., for appellants.

Scott P. Crampton, Asst. Atty. Gen., William Estabrook, III, Gilbert E. Andrews, Michael L. Paup, Libero Marinelli, Jr., Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal from a decision of the Tax Court which held that the petitioner taxpayers realized taxable gain in the form of cancellation of indebtedness upon the surrender of their stock in Grant County Coal Corporation ("Grant County") to R. H. Jamison in complete satisfaction of their non-recourse obligations to him secured by the same, even though their stock had a fair market value of zero at the time of surrender. This case thus raises an issue left open by the Supreme Court's landmark decision in *Crane v. Commissioner,* 331 U.S. 1, 14 n. 37, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). In addition, two of the petitioners contest the entry of a negligence penalty against them pursuant to 26 U.S.C. § 6653(a) for failure to report as income the gain on the surrender of the Grant County stock and to recapture certain investment credits previously applied by them to reduce their income tax liability.

The relevant facts as found by the Tax Court or stipulated to by the parties may be briefly stated. The petitioners are relatives and/or close business associates of R. H. Jamison, a prominent Western Pennsylvania coal-mine operator. In 1964, Jamison organized Grant County for the purpose of developing a West Virginia strip-mining operation and caused it to issue its stock to the petitioners and four others for no consideration on their part. In order to provide the corporation with working capital, Jamison advanced $500,000 to Grant County's shareholders [1] in amounts proportionate to their interest in the corporation. Each shareholder then executed a demand, non-recourse note payable to Jamison in the amount previously advanced to him. These notes were secured solely by the shareholders' Grant County stock. Thereafter, the shareholders contributed the funds advanced to them by Jamison to the capital of Grant County which used them to commence mining operations.

The anticipated profits from the Grant County venture never materialized. Instead, the corporation suffered net operating losses of nearly $600,000 in the years 1964 through 1966. By the beginning of 1967, these continuing losses had left Grant County on the verge of bankruptcy and rendered the shareholders' stock therein valueless. At this point in time, Jamison demanded payment on the shareholders' notes. When no such payments were forthcoming, he notified them that he was foreclosing on their stock. Shortly after the foreclosure, Grant County went into bankruptcy.

Despite the absence of profits during the period of Grant County's operation, each of its shareholders secured significant tax benefits from his ownership of Grant County stock. Shortly after its incorporation, Grant County's shareholders had filed an election with the Internal Revenue Service ("I.R.S.") to have Grant County taxed as a small business corporation under Subchapter S of the Internal Revenue Code ("I.R. C."). As a result, its net operating losses passed through to its shareholders in proportion to their interest in the corporation and they were entitled to, and did, claim such losses as deductions in computing their personal tax liability. Likewise, the investment tax credits earned by Grant County under 26 U.S.C. § 38, during this period passed through to its shareholders because of its status as a Subchapter S corporation. In addition, Grant County paid the interest due on each shareholder's note to Jamison. The shareholders, in turn, claimed these interest payments as deductions on their personal tax returns under 26 U.S.C. § 163.

For the petitioners herein, these interest and operating loss deductions enabled them to shelter from federal taxation nearly $298,000 in income earned from outside sources and the investment tax credits claimed reduced their income tax liability by approximately $40,000. However, it should be noted that both the operating loss

---

1. Four of Grant County's original shareholders are not parties to this appeal. Hereinafter, the term "shareholders" shall refer to all of Grant County's original shareholders, and the term "petitioners" only to the shareholders involved in this appeal.

and interest deductions claimed by the shareholders had the necessary effect of reducing their adjusted bases in the Grant County stock in an amount equal to the deductions taken.

On their 1967 tax returns, none of the petitioners reported any gain on the transfer of their stock to Jamison nor did they recapture any of the investment tax credits claimed in prior years. The Commissioner of the I.R.S., however, determined that the petitioners had realized taxable gain on the foreclosure in the amount by which their discharged indebtedness exceeded their adjusted bases in the Grant County stock. He also determined that the investment credits were subject to recapture. Accordingly, he entered tax deficiencies against the petitioners. In addition, he assessed a negligence penalty pursuant to 26 U.S.C. § 6653(a) against two of the petitioners for failure to report these items. Thereafter, the petitioners challenged the Commissioner's determinations in the Tax Court which, for the most part, upheld the Commissioner.[2] This appeal followed.[3]

In concluding that the petitioners had realized taxable gain upon the foreclosure, the Commissioner took the position that, under *Crane*, the petitioners had realized cancellation of indebtedness income on the surrender of their stock in the amount of their discharged non-recourse obligations. Although the petitioners' original bases in their Grant County stock equaled the amount of their obligations to Jamison, by the time of foreclosure their adjusted bases in that stock had been reduced below their indebtedness by virtue of the substantial interest and operating loss deductions previously claimed. As the amount of the indebtedness extinguished by the foreclosure thus exceeded their adjusted bases in the stock, the Commissioner determined that

they had realized taxable gain in the amount of that excess within the meaning of 26 U.S.C. § 1001(a).[4]

Of course, the existence of a debtor-creditor relationship between the petitioners and Jamison is a necessary predicate to a determination that the petitioners realized taxable gain on the transfer of their stock. Obviously, if the petitioners had no obligation to repay the funds advanced to them by Jamison, no cancellation of indebtedness income could have thereafter arisen. Despite the appearance of such indebtedness in the instant case, however, one of the positions taken by the petitioners in the Tax Court was that the cash advances made to them were intended as gifts and not as loans. Hence, they maintained that there were never any debts in existence, the discharge of which would generate cancellation of indebtedness income. The petitioners reiterated this contention in their arguments before this Court.

Although the petitioners thus placed in issue the question of whether the Jamison advances constituted gifts or loans, the Tax Court failed to make any specific findings on this threshold matter. Indeed, at one point in its opinion, albeit in the narrow context of determining the petitioners' original basis in the stock, the Tax Court stated that "[i]t is not necessary to determine whether such advances are to be treated as 'debt' or as 'gifts'". However, we fail to understand how the court could have reached the ultimate issue before it without first resolving this question since the petitioners could not have realized any cancellation of indebtedness income on the foreclosure if no debts were in existence. It may be that the Tax Court implicitly resolved this matter in the government's favor in view of its ultimate determination that the petitioners had realized taxable gain on the

**2.** The Commissioner's original determination that the petitioners had realized ordinary income rather than capital gains on the foreclosure was reversed by the Tax Court. However, the Tax Court upheld the Commissioner's actions in all other respects.

**3.** The petitioners do not contest the Tax Court's determination that the investment tax credits were subject to recapture.

**4.** Section 1001(a) defines gain as the excess of the amount realized upon the sale or other disposition of property over the taxpayer's adjusted basis in that property.

surrender of their stock. On the other hand, it may be that the court misunderstood the thrust of the petitioners' argument, and, as a result, failed to confront it. However, in view of the threshold importance of this issue, the explicitness with which the petitioners have asserted it both in the Tax Court and on this appeal, and the ambiguous nature of the Tax Court's treatment of it, we believe that the case must be remanded so that the Tax Court may properly resolve this crucial matter in the first instance.[5]

Since we have decided to remand this case, it is unnecessary for us to address the petitioners' argument that *Crane* does not require the inclusion of a discharged nonrecourse obligation in the amount realized upon the disposition of property securing the same where, as here, the fair market value of that property is not only less than the debt extinguished, but is, in fact, zero. However, in view of the general importance of this issue to the tax bar and the heavy emphasis placed on it by the parties before this Court, we would expect the Tax Court to directly address it if, upon remand, it determines that the Jamison advances constituted debt. Likewise, in the event the Tax Court resolves the threshold issue in the Commissioner's favor, we believe that some discussion of petitioners' alternative contention concerning the so-called purchase money exception to the cancellation of indebtedness doctrine would be appropriate.

The decision of the Tax Court will be vacated and this case remanded for further proceedings not inconsistent with this opinion.

**5.** Of course, in view of our decision to remand on this issue, any resolution of the challenge raised by two of the petitioners to the imposi-tion of the negligence penalty against them would be premature.