GAVIN S. MILLAR, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5884–72, 5885–72, 5888–72, 5889–72, 5892–72, 5893–72.     Filed January 10, 1977.

*Edmund W. Ridall, Jr.,* and *R. K. Conrad,* for the petitioners.
*Joseph M. Abele,* for the respondent.

SUPPLEMENTAL OPINION

QUEALY, *Judge:* In our opinion filed April 22, 1975 (T.C. Memo. 1975–113), the Court held that the basis of petitioners in the stock of Grant County Coal Corp., a subchapter S cor-

---

[1] Cases of the following petitioners are consolidated herewith: John R. Jamison and Suzon G. Jamison, docket No. 5885–72; Philip D. Rodgers and Elizabeth C. Rodgers, docket No. 5888–72; Philip R. Jamison and Helen L. S. Jamison, docket No. 5889–72; James L. Tenley and Betty J. Tenley, docket No. 5892–72; and Robert K. Conrad and Jane H. Conrad, docket No. 5893–72.

poration, for purposes of determining the deductibility by its shareholders of losses sustained by the corporation, should include the sum of $500,000 contributed to the corporation on behalf of its shareholders by R. H. Jamison, Jr., in the form of loans evidenced by nonrecourse notes in the amount of the respective contributions by each shareholder, payment of which was secured solely by a pledge of their respective shares. In so holding, this Court stated that with respect to this issue the result would be the same whether advances are treated as a "debt" or as "gifts."

On appeal, the U.S. Court of Appeals for the Third Circuit remanded the case in order that the Tax Court might determine whether the amounts contributed to the capital of the corporation by or on behalf of the petitioners constituted loans from R. H. Jamison, Jr., or whether such amounts should be treated as gifts by him to the petitioners. *Millar v. Commissioner*, 540 F.2d 184 (3d Cir. 1976). In the event that this Court should determine, on remand, that the amounts contributed to the capital of the corporation constituted "loans" to the petitioners, the Court of Appeals requested that this Court consider the question whether the discharge of nonrecourse obligations should be included in the amount realized from the sale or other disposition of the stock by petitioners where the fair market value of such stock is less than the amount of the debt which was extinguished.

In the trial of the case before the Tax Court, petitioners did not contend that the amounts purportedly "loaned" to them by Mr. Jamison should be treated as gifts. On the contrary, petitioners were given an opportunity to present the testimony of R. H. Jamison, Jr., for the purpose of raising the issue and declined to do so. In petitioners' brief, the Tax Court was requested to find the following:

(1) Grant was a West Virginia business corporation, electing Internal Revenue Code subchapter S treatment, and petitioners were Grant shareholders consenting to such election (Stip. pars. 11 and 12).

(2) Since August 1, 1964, petitioners were, and even now continue to be, shareholders of Grant (Stip. pars. 30 and 33).

(3) From July 28, 1964, to December 20, 1965, petitioners borrowed $500,000 from Jamison and forwith paid the total thereof into Grant as capital to be used for corporate purposes (Stip. pars. 26 and 27).

(4) As security for Jamison's loans to petitioners, demand, promissory, nonrecourse notes were signed by petitioners and their Grant stock was

assigned by petitioners to Jamison by separate stock powers, as collateral to their notes (Stip. pars. 26, 27, 31).

Again, in the same brief under the title "Did R. H. Jamison, Jr. Make Gifts To Petitioners?", petitioners make the following statement:

Although it is Jamison's immediate problem, petitioners know of no action or event, delivery, notice, or otherwise, usually required in the making of a completed gift, that Jamison has taken or participated in involving Grant stock or the petitioners' notes payable to him, that would constitute a gift, reportable to respondent.

On the basis of the record, the Court is unable to find that there was a gift of $500,000 to the petitioners by R. H. Jamison, Jr. He caused the Grant County Coal Corp. to be organized and transferred certain leases to the corporation, with the expectation that the venture would be successful. He caused the stock to be issued in the names of the petitioners and his business associates without consideration, at which time it must be assumed that the stock had no value. In order to provide working capital for the corporation, Mr. Jamison from time to time issued checks totaling $500,000 in the names of the respective shareholders in order that this amount might be contributed by them to the corporation. Mr. Jamison then took back nonrecourse notes from each of the shareholders secured by their stock.

If the venture had met with success, it must be presumed that Mr. Jamison intended to recoup the amount of his advances from the petitioners. In fact, Mr. Jamison in turn borrowed the sum of $500,000 from the Mellon National Bank & Trust Co., further evidencing an intent on his part that the petitioners would ultimately be able to repay the $500,000 which he had advanced to them; and Mr. Jamison would in turn repay his loan to the bank.

Mr. Jamison's intent to recover his loan of $500,000 from the petitioners is further evidenced by the fact that he did not report the amounts loaned to them as gifts for purposes of the internal revenue laws.

In the absence of any proof to the contrary, the transaction speaks for itself. It was Mr. Jamison's intent to make a nonrecourse loan to the petitioners and not a "gift." As an experienced coal operator, Mr. Jamison obviously felt that he would be able to make some money for them from the

operations of the Grant County Coal Corp. and get his money back.

This Court found that the petitioners, and not Mr. Jamison, were the real shareholders of Grant County Coal Corp. As such, petitioners made a valid election to be taxed under subchapter S of the Code (sec. 1372). Pursuant to such election, petitioners were chargeable with their pro rata share of the net taxable income and operating losses of the corporation (secs. 1373–1374). With respect to the losses allowed, however, section 1374(c)(2) provides, as follows:

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

The losses deductible by petitioners were thus limited to the adjusted basis of their stock of the corporation. At the outset, such basis was a nominal amount or "zero."

In order to provide working capital for the corporation, Mr. Jamison gave the petitioners checks from time to time, as needed, totaling $500,000, which were endorsed over by them as contributions to the capital of the corporation. Petitioners executed a series of nonrecourse notes with the stock as collateral to evidence this indebtedness. Except for the contributions to capital obtained in this manner, petitioners would not have been entitled to deduct the losses of the corporation in the first instance. The respondent's disallowance of such deductions would have been sustained by the Court.

In reliance on the rule enunciated by *Crane v. Commissioner*, 331 U.S. 1 (1947), this Court held that petitioners were entitled to include as a part of their adjusted basis within the

meaning of section 1374(c)(2) the respective contributions to the capital of the corporation made out of "borrowed" funds. To the extent of such contributions, the petitioners received the benefit of deducting the losses sustained by the corporation.

At the time that these "loans" were contributed to the corporation, it cannot be said that the value of petitioners' stock which was pledged to secure the loans equaled or exceeded the amount of the indebtedness. In fact, the contributions were made to enable the corporation to continue in business notwithstanding recurring losses.

The term "adjusted basis" is defined by the statute. Neither the statute nor the *Crane* case would deny the petitioners the right to increase their basis in this stock on account of the amounts contributed, regardless of the source of the funds. See sec. 1.118–1, Income Tax Regs.

When it became apparent that the corporation faced bankruptcy, Mr. Jamison took the necessary steps to reacquire the stock in accordance with the terms of the notes. These steps amounted to a "foreclosure." Such a foreclosure would constitute a sale or exchange of the surrendered stock. *Helvering v. Hammel,* 311 U.S. 504 (1941); *Electro-Chemical Co. v. Commissioner,* 311 U.S. 513 (1941). In the sale or exchange of such stock, petitioners had a gain to the extent that the amount realized, in this case the amount of the extinguished indebtedness, exceeded the adjusted basis of the surrendered stock. *Parker v. Delaney,* 186 F.2d 455 (1st Cir. 1950); *Woodsam Associates, Inc.,* 16 T.C. 649, affd. 198 F.2d 357 (2d Cir. 1952); *Mendham Corp.,* 9 T.C. 320 (1947); *Lutz & Schramm Co.,* 1 T.C. 682 (1943). This Court has held that this result follows regardless of whether the value of the property surrendered is less than the amount of the obligation. *Mendham Corp., supra; Lutz & Schramm Co., supra.*[2]

In our opinion, the value of the stock was immaterial. Petitioners had received a cash equivalent in the amount of the notes, whether they were personally liable on such notes

---

[2] This result has also been suggested by a number of commentators. For discussion of this result, see Ginsburg, "The Leaky Tax Shelter," 53 Taxes 719, 730 (1975); Adams, "Exploring the Outer Boundaries of the *Crane* Doctrine; An Imaginary Supreme Court Opinion," 21 Tax L. Rev. 159 (1966); Spears, "Mortgages in Excess of Bases," 11 U. So. Cal. Tax Inst. 883 (1959).

or not. *Parker v. Delaney, supra; Mendham Corp., supra.* Unlike the Court of Appeals, this Court would not, however, conclude that the stock was "worthless" when it was surrendered to Mr. Jamison. It had a value to Mr. Jamison, particularly, since as sole stockholder he would be able to deduct the anticipated losses which would be incurred in winding up the affairs of the corporation. The transaction amounted to more than the acquisition by foreclosure of a worthless piece of paper.

Finally, the Court of Appeals suggested a discussion of petitioners' alternative reliance on the so-called purchase-money exception to the cancellation-of-indebtedness doctrine.[3] Suffice to say, the facts in this case do not present a situation where the parties got together and agreed upon a reduction in the price of property sold by one to the other. The satisfaction of the notes came about strictly in accordance with the terms of the original loans. Mr. Jamison exercised his right to foreclose.

Although not directed to do so, the Court has also reconsidered whether Robert K. Conrad, petitioner in docket No. 5893-72, has sustained his burden with respect to proof of error by the respondent in assessing the penalty under section 6653(a). In sustaining the penalty, the Court took cognizance of the fact that Mr. Conrad had been a tax practitioner for many years. He drew up the documents pursuant to which Mr. Jamison reacquired the stock by foreclosure. At another point, Mr. Conrad claimed that the petitioners were, in fact, stockholders throughout the calendar year 1967 and right up to the trial. Apparently, Mr. Conrad adopted this position to justify his failure to include in his return for the taxable year 1967 the recapture of the investment tax credit under section 47. At the same time, he prepared a return for Mr. Jamison for the calendar year 1967 in which Mr. Jamison claimed the deduction of the net operating loss of Grant County Coal Corp., for the taxable year 1967, as its sole stockholder. On the whole, the Court concluded that the actions by Mr. Conrad

---

[3] It should be noted that petitioners cited in support of this contention, *Helvering v. A. L. Killian, Co.,* 128 F.2d 433 (8th Cir. 1942); *Hirsch v. Commissioner,* 115 F.2d 656 (7th Cir. 1940); *Charles L. Nutter,* 7 T.C. 480 (1946); *Gehring Publishing Co.,* 1 T.C. 345 (1942). All these cases were decided before the *Crane* decision.

exhibited the intentional lack of regard for the law and regulations upon which the statute imposes the penalty.

Accordingly, having reconsidered our opinion in this matter, we find no reason to change our views and, therefore, reaffirm that opinion.

> *Decisions will be entered in accordance with this opinion.*

Reviewed by the Court.

STERRETT, *J.,* concurring: I concur that the full amount of the nonrecourse debt constitutes an amount realized in spite of the fact that the value of the property is less than the amount of the debt. The crux of *Crane v. Commissioner,* 331 U.S. 1 (1947), is that the taxpayer received a benefit at least equal to the nonrecourse debt. However, the Supreme Court noted that "Obviously, if the value of the property is less than the amount of the mortgage, a mortgagor who is not personally liable cannot realize a benefit equal to the mortgage." *Crane v. Commissioner, supra* n. 37. Adherence to the *Crane* doctrine increases petitioners' basis in their stock, allowing them the benefit of large tax losses from their small business corporation without realizing income when their stock is foreclosed upon. The tax law must not be construed in a vacuum. Petitioners have received a tax benefit of economic substance attributable to the use of their *Crane* basis. When the property is disposed of, petitioners must account for these deductions.

WILES, *J.,* agrees with this concurring opinion.