JACK C. CHILINGIRIAN and JOANN E. CHILINGIRIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chilingirian v. Commissioner
Docket No. 28183-84.
United States Tax Court
T.C. Memo 1986-463; 1986 Tax Ct. Memo LEXIS 145; 52 T.C.M. (CCH) 606; T.C.M. (RIA) 86463; September 22, 1986. Jack C. Chilingirian and Harold I. Gash, for the petitioners. Timothy S. Murphy, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in Federal income tax and additions to tax due from petitioners as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6654
1978
$5,884.38
$1,471.10
1979
50,722.95
12,680.74
$2,536.15
$2,112.83
1980
30,925.50
7,731.38
1,546.28
1,974.48
After concessions by the parties, the issues for decision are (1) whether petitioners must recognize gain as a result of the foreclosure of two properties owned by petitioners during the years here in issue and (2) whether petitioners are liable for additions to tax under sections 6651(a), 6653(a) and 6654. *147 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Grosse Pointe Woods, Michigan. At all relevant times herein, petitioners were on the cash method of accounting. Petitioner Jack C. Chilingirian [2] is an attorney practicing law in the areas of commercial litigation, anti-trust litigation, corporate law, and municipal law. As of the date of trial, he had been practicing for approximately 14 years. In 1972, petitioners, together with two partners, purchased a building known as the Crocker Professional Center in Mount Clemens, Michigan. In August 1974, petitioners acquired the Crocker Professional Center from the partnership. At that time, petitioners obtained new financing for the property in the form of two mortgage notes. The first mortgage was with Fort Wayne Mortgage Company in the amount of $110,000. The *148 second mortgage, which was junior to the Fort Wayne mortgage, was with Frank G. Giambrone, Eunice E. Giambrone, Louis M. Davis and Rose Davis for $60,000. Petitioners were personally liable on each of the mortgage notes. Petitioners' initial basis in the Crocker Professional Center was $147,800. [3] As of June 1978, petitioners' adjusted basis in the Crocker Professional Center had been reduced to $124,275. [4]
In June of 1978, petitioners lost their interest in the Crocker Professional Center through a non-judicial foreclosure. At *149 that time, petitioners were relieved of their personal liability on the two mortgage notes in the amount of $170,000. Petitioners quitclaimed the deed to the property to the holders of the second mortgage, who assumed liability for the first mortgage to Fort Wayne Mortgage Company. On February 1, 1975, petitioners, together with Charles R. and Joanne Y. Schwarz (Mr. and Mrs. Schwarz) purchased an office building and land located at 315 Clay Avenue, Muskegon, Michigan, which was known as Medical Arts Plaza. Petitioners and Mr. and Mrs. Schwarz entered into a mortgage agreement with American Savings Association for $480,000 using Medical Arts Plaza as security. An additional mortgage on the property in the amount of $150,000 was entered into between the seller, R.A. Miller Industries, Inc., and Schwarz Enterprises, Inc. On September 8, 1975, Mr. and Mrs. Schwarz gave a quitclaim deed for their interest in the Medical Arts Plaza to petitioners in exchange for the sum of $2,500. During 1977, judicial foreclosure was initiated by American Savings Association against Medical Arts Plaza. Petitioners appealed the judgment of foreclosure to the Court of Appeals for the State of Michigan. *150 On March 8, 1979, the appeal was settled. Petitioners conveyed the deed to Medical Arts Plaza and $10,000 to American Savings Association in exchange for relief of their liability on the $480,000 mortgage note. As a result of this transfer, any equity petitioners had in the property was lost. Internal Revenue Service Agent Tony Zientak conducted audits of two projects in which petitioners participated. He audited the Medical Arts Plaza for taxable years 1975 and 1976 and Courthouse Plaza for taxable years 1976 and 1977. These audits were closed in January and March, 1979, respectively. Internal Revenue Service Agent Mark Goodwin audited petitioners' tax returns for taxable years 1977 through 1980. He began his audits in October of 1981 and closed sometime between October and December of 1982. Petitioners' tax returns for 1979 and 1980 had not been filed at the time Agent Goodwin began his audit and remained unfiled at the time the deficiency notice was mailed. On May 14, 1984, respondent mailed statutory notices of deficiency to petitioners. In the notices of deficiency, respondent determined deficiencies in income tax due from petitioners based on the gains from the foreclosures *151 of the Crocker Professional Building and Medical Arts Plaza and additions to tax based on petitioners' failure to timely file income tax returns for the years here in issue. Petitioners timely filed petitions with this Court. OPINION After concessions by the parties, the issues remaining for decision are (1) whether petitioners must recognize gain on the foreclosure of the two separate parcels of real estate, the Crocker Professional Building and the Medical Arts Plaza and (2) whether petitioners are liable for additions to tax under sections 6651(a), 6653(a) and 6654. Respondent's determinations are presumptively correct, and petitioners bear the burden of proving that such determinations are erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 1001 provides, in general, that the gain from the sale or other disposition of property is the excess of the amount realized over the adjusted basis of such property. The amount realized from the sale or other disposition of property is the sum of any money received plus the fair market value of the property (other than money) received. Absent a specific provision in the Code, the entire amount *152 of gain or loss from a sale or exchange of property must be recognized. Sec. 1001(c). The amount realized from a disposition of property includes the amount of liabilities from which the transferor is discharged as a result of such disposition. Crane v. Commissioner,331 U.S. 1 (1947); sec. 1.1001-2(a)(1), Income Tax Regs.
Petitioners in the instant case disposed of their interest in the Crocker Professional Center through a non-judicial foreclosure. They transferred a quitclaim deed to the holders of the second mortgage, who assumed liability for the first mortgage. As a result of this transaction, petitioners were relieved of personal liability on the two mortgage notes in the amount of $170,000. The parties have stipulated that petitioners' adjusted basis in the property at the time of the transfer was $124,275. Petitioners therefore realized a long-term capital gain on the disposition of the Crocker Professional Center in the amount of $45,725. Petitioners also realized a gain on the similar facts involving the foreclosure of the Medical Arts Plaza property. However, the parties were unable to reach an agreement with respect to petitioners' basis in this *153 property. Petitioners' basis must therefore be determined by the Court in order to calculate the amount of gain realized on the foreclosure. Respondent argues, on brief, that petitioners' basis in the property is the sum of the amount of cash paid for the property ($400,000) plus the amount paid for the quit claim deed ($2,500). Respondent bases this argument on an agreement which petitioners entered into with the Internal Revenue Service following an audit in a prior year. The agreement which petitioners signed embodied a compromise of several issues including the amount of allowable depreciation on the Medical Arts Plaza property. However, we do not agree with respondent's conclusion that a compromise agreement entered into by petitioners in a prior year which is not before this Court is binding on the Court or petitioners in the instant litigation. Our determination must be based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974). Section 1012 provides, in general, that the basis of property is its cost. The cost of property includes the amount of *154 debt obligations to which the property is subject, whether or not the owner of such property is personally liable for such obligations. Crane v. Commissioner,supra;Mayerson v. Commissioner,47 T.C. 340 (1966); Blackstone Theater Company v. Commissioner,12 T.C. 801 (1949). At the time petitioners acquired the Medical Arts Plaza property, they entered into a mortgage with American Savings Association for $480,000 using the Medical Arts Plaza property as security. Petitioners subsequently purchased a quitclaim deed from Charles and Joanne Schwarz for $2,500, at which time the purchase money mortgage from R.A. Miller Industries, Inc., to Schwarz Enterprises, Inc., in the amount of $150,000 remained outstanding. The fact that petitioners did not assume this mortgage does not preclude the inclusion of this amount in their basis. Crane v. Commissioner,supra.Therefore, we find as a fact that petitioners' basis in the Medical Arts Plaza property includes the amounts of both outstanding mortgages plus the $2,500 payment for the quitclaim deed. The amount realized on the foreclosure of the Medical Arts Plaza *155 property includes the total amount of both mortgages outstanding at the time of foreclosure. Commissioner v. Tufts,461 U.S. 300 (1983); Miller v. Commissioner,67 T.C. 656 (1977), affd. in part 577 F.2d 212 (3d Cir. 1978), cert. denied 439 U.S. 1046 (1978); Woodsam Associates, Inc. v. Commissioner,16 T.C. 649 (1951), affd. 198 F.2d 357 (2d Cir. 1952); Mendham Corp. v. Commissioner,9 T.C. 320 (1947); Lutz and Schramm v. Co. Commissioner,1 T.C. 682 (1943). The amount of the gain which petitioners must recognize, therefore, is the difference between the amount of the mortgages discharged on the foreclosure and petitioners' basis in the Medical Arts Plaza property, adjusted for allowable depreciation, plus the $10,000 deficiency judgment paid by petitioners to American Savings Association.[5]
Petitioners argue on brief, with respect *156 to both properties, that no gain should be recognized on the foreclosure of property where the owner of such property is personally liable on the mortgage and any equity in the property is lost. Petitioners contend that their personal liability on the mortgages herein distinguishes this case from Crane and Tufts. The Supreme Court in Crane noted, however, that had the taxpayer been personally liable on the mortgage, the amount realized on the sale or exchange of the property would include the amount of the mortgage within the meaning of the predecessor of section 1001. [6]Crane v. Commissioner,supra at 13. Petitioners alternatively suggest that the cases from Crane to Tufts were erroneously decided and urge that we reexamine these decisions. This argument is not new and once again we opine that we are not at liberty to pursue this suggested course. Bolger v. Commissioner,59 T.C. 760, 771 (1973). *157 Respondent determined additions to tax under section 6651(a) for the late filing of petitioners' 1978 Federal income tax return and failure to file Federal income tax returns for 1979 and 1980. Section 6651(a) provides, in pertinent part: (a) Addition to the Tax. -- In case of failure -- (1) to file any return * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. Petitioners bear the burden of proving that the failure to file a timely return is due to reasonable cause and not to willful neglect. Lee v. Commissioner,227 F.2d 181, 184 (5th Cir. 1955), cert. denied 351 U.S. 982 (1956). Petitioners argue that they failed to file timely income tax returns for the years in issue based on the advice of *158 Internal Revenue agents who were auditing their returns for earlier years. Petitioners filed requests for automatic extensions for each of the years here in issue. Consequently, the due dates for their returns were June 15, 1979, June 16, 1980, [7] and June 15, 1981, for taxable years 1978, 1979 and 1980, respectively. With respect to taxable year 1978, petitioners claim that they relied on the advice of Internal Revenue Agent Tony Zientak, who audited two partnerships in which petitioners were involved for 1977 and 1978. These audits were closed in January and March of 1979. At that time, petitioners' income tax return for taxable year 1978 was not yet due. Mr. Zientak testified that it would have been impossible for him to advise petitioners to delay filing a return which was not due at the time he conducted his audit. We find Mr. Zientak's testimony credible. Petitioners have failed to show reasonable cause for the late filing of their 1978 Federal income tax return, and are therefore liable for the additions to tax under section 6651(a) for that year. *159 With respect to taxable years 1979 and 1980, petitioners maintain that they relied on the advice of Revenue Agent Mark Goodwin who audited petitioners' Federal income tax liability for taxable years 1977 through 1980. Mr. Goodwin began this audit in October of 1981. Petitioners' Federal income tax returns for 1979 and 1980 had not been filed. At that time, more than 5 months had elapsed since the due date for petitioners' 1978 and 1979 returns, and 3-1/2 months had elapsed since the due date (as extended) for petitioners' 1980 return. Prior to Mr. Goodwin's involvement, therefore, petitioners were liable for the 25 percent addition to tax for years 1978 and 1979 and at least a 20 percent addition to tax for taxable year 1980 under section 6651(a). Petitioners alleged that Mr. Goodwin advised them not to file Federal income tax returns for 1979 and 1980 until his audit was completed, and that they therefore have reasonable cause for the failure to file such returns. Even had Mr. Goodwin provided such advice, a fact that petitioners have not proven, it would have been too late to prevent the imposition of the additions to tax under section 6651(a). Further, Mr. Goodwin testified *160 that he filed substitute returns for petitioners in June of 1982 for taxable years 1979 and 1980. Mr. Goodwin testified that his procedure before the filing of such substitute returns is to attempt to secure a delinquent return from the taxpayer. He was unable to secure such a return from petitioners herein. After filing substitute returns for the petitioners, Mr. Goodwin advised them that these returns had been filed and that it was not necessary for petitioners to file returns for 1979 and 1980. At that time, the 5-month period in which the maximum addition to tax under section 6651(a) had long since run. Therefore, we find that petitioners did not have reasonable cause for the failure to file Federal income tax returns for 1979 and 1980 and we sustain respondent's determination under section 6651(a) with respect to those years. Respondent further determined additions to tax for each of the years here in issue under section 6653(a). Section 6653(a) provides: "If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. *161 " Petitioners bear the burden of proving that no part of the underpayment herein is due to negligence or intentional disregard of rules and regulations. Barton v. Commissioner,424 F.2d 1295 (7th Cir. 1970), cert. denied 400 U.S. 949 (1970). For the same reasons that we found that petitioners' late filing of their 1978 return and failure to file returns for 1979 and 1980 were not due to reasonable cause, we find that the underpayment of tax for those years was due to negligence. See Bagur v. Commissioner,66 T.C. 817, 824 (1976), remanded 603 F.2d 491 (5th Cir. 1979). Mr. Chilingirian was an attorney who dealt almost constantly with the Internal Revenue Service during the years here in issue. He was aware of his duty to file returns but did not exercise due care in performing that duty. Therefore, petitioners are liable for the additions to tax under section 6653(a). [8]
Respondent also determined an addition to tax under section 6654 for the failure to pay estimated income tax for taxable years 1979 and 1980. *162 Section 6654 provides for an addition to tax in the case of any underpayment of estimated tax by an individual. This addition to tax is mandatory absent one of several statutory exceptions, none of which have been shown to be applicable here. Extenuating circumstances are not a basis for relief. Estate of Rubin v. Commissioner,33 T.C. 1071 (1960); Bagur v. Commissioner,supra. Therefore, we find that petitioners are liable for the additions to tax under section 6654 for 1979 and 1980. To reflect concessions of the parties and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.↩
2. The word "petitioner" hereinafter refers to petitioner Jack C. Chilingirian. The word "petitioners" refers to both Jack C. and Joann E. Chilingirian.↩
3. T the time petitioners acquired the Crocker Professional Center, Mr. Chilingirian made payments to each of the partners who had an interest in the property. These payments included a $20,000 payment to himself, in effect buying out his interest as a partner. This payment was not included in income on petitioners' 1974 income tax return, and therefore, the parties have agreed that petitioners' basis in the Crocker Professional Center should be reduced by this amount. ↩
4. The parties have agreed that the allowable depreciation on the building was $6,250 per year. This amount reflects a building value of $125,000 and a useful life of 20 years.↩
5. Because we disagree with both parties' assertions concerning petitioners' basis in the property, it will be necessary for the parties to compute the amount of depreciation allowable on the property prior to the foreclosure.↩
6. Section 111(a) of the Internal Revenue Code of 1939↩ provided, in general, that gain from the sale or other disposition of property was the excess of the amount realized over the adjusted basis.
7. Because June 15, 1980, fell on a Sunday, petitioners' return for 1975 was due on the following day. Sec. 7503.↩
8. See Paddock v. Commissioner,T.C. Memo. 1985-586; Nelson v. Commissioner,↩ 1983-225.